329 S.E.2d 125

### NATIONAL FRUIT PRODUCT CO., INC.

v.

### BALTIMORE AND OHIO RAILROAD CO. and Consolidated Railroad Corp.

#### No. 16077.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 29, 1985.

Decided April 18, 1985.

**760**

Lacy I. Rice, Jr., Rice, Hannis & Douglas, Martinsburg, for appellant.

Clarence E. Martin, III, Walter M. Jones, III, Martin & Seibert, Martinsburg, for appellees.

MILLER, Justice:

The issue presented is whether an employer has a cause of action against a third party to recover benefits paid pursuant to the West Virginia Workers' Compensation Act to one of its employees who was injured on the job by the negligence of the third party. The Circuit Court of Berkeley County held that such an action cannot be maintained. It granted the motion for summary judgment filed by the defendants, the Baltimore & Ohio Railroad Company and the Consolidated Rail Corporation. The employer, National Fruit Product Company (National Fruit), contends that the circuit court erred, but we disagree and affirm the decision of the circuit court.

National Fruit alleged in its complaint that on December 8, 1978, two of its employees were seriously injured when the bulkhead door of a boxcar owned and operated by the defendants fell on them as they were preparing to load the boxcar. As a result of the defendants' negligence, National Fruit alleges that it will be required to make increased payments into the Workers' Compensation Fund to cover the benefits that will be received by the injured employees. National Fruit argues that it is entitled to recover this increase in payments from the defendants under either a theory of implied indemnity or loss of employees' services.[1]

## I.

■ The general rule that we have applied in summary judgment cases is stated in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963):

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

*See also* Syllabus, *Beverly Manor Assocs. v. West*, 172 W.Va. 567, 309 S.E.2d 66

---

**1.** A third argument briefly addressed by National Fruit is that under the Safety Appliance Act, 45 U.S.C. § 14, and *Hallada v. Great N. Ry.*, 244 Minn. 81, 69 N.W.2d 673, *cert. denied*, 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 773 (1955), *overruled on other grounds, Busch v. Busch Constr., Inc.*, 262 N.W.2d 377 (Minn.1977), the defendants could be held absolutely liable for using a defective or unsafe bulkhead door on the boxcar. This statute and the cases under it deal with the primary liability of a railroad company for operating trains with defective equipment and do not relate to the right of an employer to recover workers' compensation payments from the railroad company.

(1983); Syllabus Point 1, *Perlick & Co. v. Lakeview Creditor's Trustee Comm.*, W.Va., 298 S.E.2d 228 (1982); Syllabus, *Chambers v. Sovereign Coal Corp.*, 170 W.Va. 537, 295 S.E.2d 28 (1982); Syllabus Point 1, *Karnell v. Nutting*, 166 W.Va. 269, 273 S.E.2d 93 (1980).

In examining an appeal from a summary judgment, we will view the facts in the light most favorable to the party against whom judgment was rendered, which in this case was National Fruit. *Beverly Manor Assocs. v. West, supra; Board of Education v. Van Buren & Firestone Architects, Inc.*, 165 W.Va. 140, 267 S.E.2d 440, 442 (1980). Although we have recognized the harshness of summary judgment, we hold that in this case it was appropriate because the issue presented is controlled by the applicable law and is not contingent upon any controversy in the facts.

National Fruit concedes that the West Virginia Workers' Compensation Act contains no provision authorizing an employer to recover workers' compensation benefits paid to employees injured by negligent third parties. It is generally recognized that West Virginia, Georgia, and Ohio are the only states that have not by statute given employers the right, through subrogation, to recover workers' compensation benefits paid to employees injured by a third-party's negligence. *See* 2A A. Larson, The Law of Workmen's Compensation § 71.30 (1983). The statutory method for subrogation varies among the different state compensation acts, as shown by the following summary in 2A A. Larson, *supra*, § 74.00:

> "The mechanics of subrogation vary between the states, some subrogating the payor of compensation absolutely, some allowing the subrogation right and the employee's direct right to sue the third party to stand side by side, and some establishing a sequence under which first one, then the other, has the right to bring the third-party suit. Under all forms, however, the ultimate result of following out the statutory procedure is approximately the same: reimbursement of the payor of compensation, with any excess—or most of the excess—going to the employee."

Under a typical subrogation statute, the injured employee's ability to recover in a separate action against the negligent third party is diminished by the amount of workers' compensation benefits he receives. Thus, statutory subrogation precludes the injured employee from obtaining workers' compensation benefits and at the same time recovering the total amount of his damages against the negligent third party. His rights under statutory subrogation are limited as against the negligent third party to the extent that his employer can recoup his compensation payments from any award obtained against the negligent third party.

The absence of a subrogation statute in West Virginia has been a critical factor in the few cases we have decided involving the right of employees to keep both their workers' compensation benefits and any damages awarded in a negligence suit against a third party. In *Mercer v. Ott*, 78 W.Va. 629, 89 S.E. 952 (1916), the administrator for an employee killed on the job by the negligence of a third party brought suit against the third party and recovered damages in a settlement of the claim. The Commissioner refused to award any workers' compensation benefits to the deceased employee's surviving dependents, claiming that the settlement with the third party precluded payment of any benefits. In rejecting the Commissioner's holding, we stated in Syllabus Point 3:

> "Where a workman is killed by an accident arising in the course of and resulting from his employment, and a tort-feasor other than his employer is responsible therefor, the right to compensation from the workmen's compensation fund by a dependent of the deceased is not lost by a recovery of damages against the tortfeasor, by the personal representative of the deceased."

In our discussion in *Mercer*, 78 W.Va. at 636, 89 S.E. at 954, we noted:

> "The compensation acts of a number of jurisdictions of the United States and of Canada provide, in substance, that where an employee has been injured by the negligence of a third person under such

circumstances as to render him legally liable, and compensation for the injury has been paid by the employer, he is subrogated to the employee's rights against such third person and may bring an action against the latter for damages....

*   *   *

"The statute of this state does not in terms release the tort-feasor, or assign the right of action, when compensation is paid out of the workmen's compensation fund."

The comments we made in 1916 in *Mercer* are just as applicable to the present case because the legislature has yet to include a subrogation statute in our Workers' Compensation Act.

In *Jones v. Appalachian Elec. Power Co.*, 145 W.Va. 478, 115 S.E.2d 129 (1960), the third party attempted to have the amount of damages awarded against it, in a negligence action filed by a deceased employee's dependent, reduced through remittitur by the amount of workers' compensation benefits payable to the dependent. After noting that our Workers' Compensation Act did not have a subrogation statute, we held in Syllabus Point 3: "The amount of compensation received for injury or death from the Workmen's Compensation Fund is not a proper subject for a remittitur in an action by the injured person, or the administrator of his estate in case of death, against a third party responsible for his injury or death."

Similarly, we held in Syllabus Point 3 of *Jones v. Laird Foundation, Inc.*, 156 W.Va. 479, 195 S.E.2d 821 (1973), that

workers' compensation benefits received by an injured employee cannot be used to mitigate damages awarded against a negligent third party:

"Workmen's Compensation benefits for an original work related injury and for aggravation of an original injury, or for a separate injury occasioned by medical treatment administered for a work related injury, are within the 'Collateral Source Rule' in the same way as accident insurance, health insurance and life insurance, and, therefore, benefits from Workmen's Compensation cannot be applied to reduce damages in an action against a successive tort-feasor such as a physician or hospital for injury caused by negligent or unskillful treatment of a compensable injury." [2]

Although not binding on this Court, the Fourth Circuit Court of Appeals in *Crab Orchard Improvement Co. v. Chesapeake & O. Ry. Co.*, 115 F.2d 277, 282 (4th Cir.), *cert. denied,* 312 U.S. 702, 61 S.Ct. 807, 85 L.Ed. 1135 (1940), in construing West Virginia law particularly our decision in *Mercer,* rejected the argument that an employer has a right of indemnity against a negligent third party for workers' compensation benefits paid:

"[T]he third party tort-feasor receives no benefit by the employer's payment under the [Workers' Compensation] Act. Furthermore, as the duty and obligation of the employer are different and distinct from the duty and obligation of the third party tort-feasor, the requisites for the application of the indemnity principles are not met. A similar conclusion was reached in *McCullough v. John B. Var-*

---

**2.** In his concurring opinion in *Laird Foundation,* 156 W.Va. at 490–91, 195 S.E.2d at 828, Justice Sprouse observed that the law in West Virginia allows an employee to have a double recovery because he is not required by statute to reduce any amount of damages awarded against a third party by the amount of workers' compensation benefits received:

"There may be serious doubt about the desirability of permitting double recovery even in this limited area of the law. This, however, is strictly a matter within the prerogative of the Legislature. The vast majority of our states prevent double recovery by their statutes—not by permitting a tort-feasor physi-

cian to go free perhaps at the expense of an innocent employer who contributes to the fund but by apportioning the damages. This is accomplished principally by requiring election, subrogation or a similar device....

"... West Virginia is apparently one of only two states which has no provision for election or subrogation in its workmen's compensation laws.... Again, this is a legislative question, but, until the Legislature has balanced the equities, it is not for this Court to compound the inequity by permitting the negligent physician the protection of a government umbrella with the employer footing the bill." (Citations omitted).

*ick Co.,* [90 N.H. 409, 412, 10 A.2d 245, 247 (1939)]:

> 'Normally the right to indemnity arises only when there has been a discharge by one person of a duty also owed by another. * * *
>
> 'Clearly this is not a case for indemnity within the principles thus stated. The duty of an employer to pay compensation under the statute is entirely separate and distinct from the duty of a third person to pay damages to a servant for personal injuries caused by his negligence. * * *,'"

Critical to the Fourth Circuit's decision in *Crab Orchard* was its reliance on the general definition of indemnity contained in Section 76 of the Restatement of Restitution (1937): "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." The Fourth Circuit observed that "[n]ot only must a benefit be conferred upon the [third party] by a discharge of his duty or obligation, but the discharge must have occurred under circumstances in which the [employer] was, at the same time, discharging a personal obligation coextensive with that of the [third party]." *Crab Orchard,* 115 F.2d at 282.

The obligation or duty between the employer and the third party must be a common or coextensive obligation as it relates to the employee before indemnity can be implied based on that relationship. Here,

the employer's liability is statutorily imposed and arises by virtue of the injuries suffered by its employees in the course of and resulting from their employment. The employer's liability is not based on any negligence, which is the predicate for third-party liability. Because of the presence of employer subrogation statutes in most states, this issue has not been extensively litigated.[3] Several other courts have followed the indemnity analysis applied in *Crab Orchard* and have concluded that the lack of a common and coextensive obligation forecloses any claim of implied indemnity. *See Standard Oil Co. v. United States,* 153 F.2d 958 (9th Cir.1946), *aff'd sub nom., United States v. Standard Oil,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); *Harris Corp. v. Comair, Inc.,* 510 F.Supp. 1168, 1174 (E.D.Ky.1981), *aff'd,* 712 F.2d 1069 (6th Cir.1983); *American Mut. Liability Ins. Co. v. Reed Cleaners,* 265 Minn. 503, 122 N.W.2d 178 (1963); *State ex rel. Manchester Ins. Co. v. Moss,* 522 S.W.2d 772 (Mo.1975); *Ore-Ida Foods, Inc. v. Indian Head Cattle Co.,* 290 Or. 909, 627 P.2d 469 (1981); 42 C.J.S. *Indemnity* § 3 (1944).

National Fruit argues that under our definition of implied indemnity set out in Syllabus Point 2 of *Hill v. Joseph T. Ryerson & Son, Inc.,* 165 W.Va. 22, 268 S.E.2d 296 (1980), a suit based on implied indemnity would be proper in the present case:

> "The general principle of implied indemnity arises from equitable considerations. At the heart of the doctrine is the premise that the person seeking to assert implied indemnity—the indemnitee—has been required to pay damages caused by

---

3. The two other jurisdictions without subrogation statutes, Georgia and Ohio, have reached different conclusions on whether indemnity can be implied from the employer/third-party relationship to allow for recovery of workers' compensation payments. In a series of terse opinions, Georgia has consistently refused to judicially recognize any equitable remedy, including indemnity, in this factual situation in the absence of a subrogation statute. *See Intex Products, Inc. v. Roper Corp.,* 160 Ga.App. 579, 287 S.E.2d 610 (1981); *North Ga. Elec. Membership Corp. v. Thomason & Holsomback Constr. Co.,* 157 Ga.App. 719, 278 S.E.2d 433 (1981); *Liberty Mut. Ins. Co. v. Georgia Ports Auth.,* 155 Ga.App. 940, 274 S.E.2d 52 (1980). Ohio, which has

shifted positions several times on this issue, recently overruled an earlier case and authorized a cause of action for an employer against a third party without elaborating in much detail the legal basis for its decision. *Ledex, Inc. v. Heatbath Corp.,* 10 Ohio St.3d 126, 461 N.E.2d 1299 (1984). Under the rule announced in *Ledex,* an employee is allowed to keep his workers' compensation benefits and the full amount of damages recovered against a negligent third party. The employer can sue the third party to recover the workers' compensation payments it has been required to make as a result of the third party's negligence. In effect, a negligent third party in Ohio has to pay twice, once to the employee and once to the employer.

a third party—the indemnitor. In the typical case, the indemnitee is made liable to the injured party because of some positive duty created by statute or the common law, but the actual cause of the injury was the act of the indemnitor."

In *Sydenstricker v. Unipunch Products, Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982), we spoke to an additional element of implied indemnity in Syllabus Point 2: "Implied indemnity is based upon principles of equity and restitution and one must be without fault to obtain implied indemnity."

In neither *Hill* nor *Sydenstricker* did we have occasion to deal with the concept of a common or coextensive joint obligation which underlies the implied indemnity theory, although we did state in *Hill*, 165 W.Va. at 27, 268 S.E.2d at 301, that:

"This is not to say that in an action for implied indemnity there is no need to analyze the relationship between the indemnitee and indemnitor. It is this relationship *inter se*, as well as to the injured party, which must ultimately determine the right to implied indemnity and the defenses available to the indemnitor."

■ We concur with the Fourth Circuit's analysis in *Crab Orchard* that in order for an implied indemnity claim to arise, there must be a common or coextensive obligation existing between the employer and the negligent third party as it relates to the injured employee. With an employer's obligation arising from the Workers' Compensation Act in which the injury need not arise from any negligence, there is no commonality of obligation with the negligent third party.

The cases cited by National Fruit in support of its implied indemnity argument are inapplicable. In *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), the United States Supreme Court held that the subrogation statute included in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 933, was not the exclusive remedy for an employer against a third party. Consequently, the employer could maintain a direct action against the third party. The United

States Supreme Court left open the question of whether such a direct action could be based on an indemnity theory. Furthermore, *Federal Marine Terminals* dealt with admiralty law, under which certain common and reciprocal duties have been developed that are not present here. Both *Ruby Lumber Co. v. Johnson Co.*, 299 Ky. 811, 187 S.W.2d 449, 166 A.L.R. 1215 (1945), and *Whittenberg Eng. & Constr. Co. v. Liberty Mut. Ins. Co.*, 390 S.W.2d 877 (1965), do not apply because they are concerned with an indemnity action between subcontractors and general contractors in a state that does have a subrogation statute.

■ In conclusion, we hold that a cause of action for indemnity cannot be implied from the relationship between an employer and a negligent third party so that the employer may recover benefits paid pursuant to the Workers' Compensation Act to one of its employees who is injured by the negligence of such third party.

II.

National Fruit next argues that under *Coal Land Dev. Co. v. Chidester*, 86 W.Va. 561, 103 S.E. 923 (1920), an employer may maintain an action against a third party for the loss of services of employees injured by the third party. Specifically, National Fruit cites Syllabus Point 3 of *Chidester*, which states: "An employer may maintain an action for damages against one who assaults or otherwise wrongfully injures his servant, where as a result of the injury the employer suffers the loss of his services." However, National Fruit recognizes that we restricted this syllabus point to apply only to intentional acts of a third-party tortfeasor in *Nemo Foundations, Inc. v. New River Co.*, 155 W.Va. 149, 181 S.E.2d 687 (1971).

■ In *Nemo*, we rejected the employer's suit for loss of an employee's services who was negligently injured by a third party and concluded in the Syllabus:

"An employer may not maintain an action to recover damages from a tort-feasor for the loss of services of his employ-

ee when such action is based on the negligent injury of the employee by said tort-feasor."

Our holding in *Nemo* is still the majority rule. *See Preiser Scientific, Inc. v. Piedmont Aviation, Inc.*, 432 F.2d 1002 (4th Cir.1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) (applying West Virginia law); *Zawadzki v. Checker Taxi Co.*, 539 F.Supp. 207 (N.D.Ill.1982) (applying Illinois law); *Phoenix Professional Hockey Club, Inc. v. Hirmer*, 108 Ariz. 482, 502 P.2d 164 (1972) (In Banc); *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 583 P.2d 721, 148 Cal. Rptr. 867 (1978) (In Bank); *Steele v. J & S Metals, Inc.*, 32 Conn.Supp. 17, 335 A.2d 629 (1974); *Chelsea Moving & Trucking Co. v. Ross Towboat Co.*, 280 Mass. 282, 182 N.E. 477 (1932); *B.V. Merrow Co. v. Stephenson*, 102 Mich.App. 63, 300 N.W.2d 734 (1980); *Frank Horton & Co. v. Diggs*, 544 S.W.2d 313 (Mo.App.1976); *Ferguson v. Green Island Contracting Corp.*, 44 A.D.2d 358, 355 N.Y.S.2d 196 (1974), *aff'd*, 36 N.Y.2d 742, 328 N.E.2d 792, 368 N.Y. S.2d 163 (1975); *Hartridge v. State Farm Mut. Auto. Ins. Co.*, 86 Wis.2d 1, 271 N.W.2d 598, 4 A.L.R. 4th 495 (1978); Annot., 4 A.L.R. 4th 504 (1981). Based on the foregoing, we conclude that National Fruit cannot maintain a cause of action for the loss of its employees' services because, under *Nemo*, there is no cause of action when the injuries were negligently inflicted by third parties.

### III.

Finally, National Fruit argues that we should judicially recognize a cause of action for an employer against a negligent third party to recover workers' compensation benefit payments, but we decline to do so. Beginning with our decision in *Mercer v. Ott*, 78 W.Va. 629, 89 S.E. 952 (1916), we have consistently held that in the absence of a subrogation statute, an employee is entitled to the full amount of damages awarded to him against a third party without any reduction for workers' compensation benefits received by the employee as a result of the injury. If we were to hold that an employee could recover workers' compensation benefits from a third party, then we would have to reconsider our mitigation of damages rule, as discussed in *Jones v. Appalachian Elec. Power Co.*, 145 W.Va. 478, 115 S.E.2d 129 (1960), and our collateral source rule, as discussed in *Jones v. Laird Foundation, Inc.*, 156 W.Va. 479, 195 S.E.2d 821 (1973). In addition, we would be remiss if we were to hold that an employer does have such a cause of action against a third party without also addressing the rights of the employee and the third party. The rights and obligations of employers, employees, and third parties are so intertwined that to resolve the problem presented in this case would require a detailed consideration of a number of issues other than those involving the employer/third-party relationship.

It is clear from examining the experiences of other states that this area of the law is best addressed by the legislature through the passage of detailed subrogation statutes. Our legislature has not acted, although it must be aware from our cases that we are one of three states that does not accord a statutory subrogation right in our Workers' Compensation Act. We have traditionally stated that our workers' compensation system is entirely a statutory creature [4] and for this reason we feel that judicial intrusion into the statutory framework, particularly on so complex an issue, is unwarranted. Subrogation statutes are of necessity extremely complex and detailed because they must be designed to anticipate all of the multifaceted problems that may occur.[5]

---

**4.** *See Cummins v. State Workmen's Compensation Comm'r*, 152 W.Va. 781, 786, 166 S.E.2d 562, 565 (1969); *Ferguson v. State Workmen's Compensation Comm'r*, 152 W.Va. 366, 371, 163 S.E.2d 465, 468 (1968); *Bailes v. State Workmen's Compensation Comm'r*, 152 W.Va. 210, 212, 161 S.E.2d 261, 263 (1968); *Dunlap v. State Compensation Director*, 149 W.Va. 266, 270, 140 S.E.2d 448, 451 (1965); *Blevins v. State Compen-*

*sation Comm'r*, 127 W.Va. 481, 495–96, 33 S.E.2d 408, 414 (1945).

**5.** We have examined several subrogation statutes, particularly N.Y. Workers' Compensation Law § 29 (McKinney 1978), on which several other jurisdictions have modeled their own statutes. The following is a list of some of the issues and problems addressed by subrogation statutes: (1) Is the employer's action indepen-

We, therefore, conclude that National Fruit did not state a cause of action in this case and affirm the summary judgment entered against National Fruit by the Circuit Court of Berkeley County.

Affirmed.

dent of the injured employee's right to sue or must it be combined with the employee's? (2) Does the employer recover the increase in premiums or the actual benefits paid to the injured employee? (3) Is the employer's right of subrogation lost if it is also negligent or does a rule of comparative fault apply? (4) Does the third party have a right to offset the amount of workers' compensation benefits paid to the employee? (5) Are the employee's damages adjusted if the estimated total amount of workers' compensation benefits payable to the employee is subsequently increased or decreased after the employer has already taken its subrogated share of the damages awarded against the third party? (6) Should the Workers' Compensation Fund along with employers and insurance carriers be authorized to recover workers' compensation benefit payments from third parties? (7) Will the entire amount of damages awarded to an employee against a third party be subject to subrogation or can the employee first subtract from the total the amount of money spent pursuing the suit, including attorney's fees? (8) Is the employee obligated to notify the employer, insurance carrier or the Workers' Compensation Fund that he is suing a third party? (9) If the amount of damages awarded to an employee against a third party is inadequate to cover the estimated total amount of workers' compensation benefits payable to the employee, how will the damages be apportioned between the employee and the employer? (10) Does the employer or the Workers' Compensation Fund have the right to sue the third party if the employee has failed to sue the third party?