Donna MARTINEZ, Cecilio Martinez, a minor, and Donna Martinez, Personal Representative of the Estate of Cecilio Martinez, Plaintiffs-Appellants,

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff-Respondent,

v.

ASHLAND OIL, INC., a foreign corporation, Defendant.

Court of Appeals

*No. 85-1357. Submitted on briefs March 26, 1986.—Decided May 7, 1986.*

(Also reported in 390 N.W.2d 72.)

For the plaintiff-appellant, the cause was submitted on the briefs of *Richard A. Heilprin* of *Heilprin Law Offices,* of Madison.

For the plaintiff-respondent, the cause was submitted on the briefs of *Richard T. Mueller* of *Richard T. Mueller, S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   The sole issue on appeal is whether a person who settles a third-party liability claim must be "made whole" under common-law subrogation principles before the worker's compensation insurance carrier, who paid primary death benefits, is entitled to reimbursement from the settlement proceeds under the distribution scheme set forth in sec. 102.29(1), Stats. We conclude that the trial court properly ruled that sec. 102.29(1) renders common-law subrogation principles inapplicable. We therefore affirm.

Cecilio Martinez was killed November 5, 1976 in an industrial accident at his place of employment. St. Paul Fire & Marine Insurance Company, the employer's worker's compensation insurance carrier, paid a

primary death benefit of $56,413 to Donna Martinez, wife of Cecilio.

An action based on third-party liability under sec. 102.29, Stats., and on wrongful death under sec. 895.04, Stats., was commenced against Ashland Oil Company by Donna, as surviving spouse and as personal representative of the estate of Cecilio Martinez, and by Cecilio Martinez, a surviving child. The parties reached a settlement by which Ashland Oil agreed to pay $100,000 to the plaintiffs. St. Paul moved for distribution of the settlement proceeds pursuant to sec. 102.29(1). The plaintiffs objected, claiming that only after they were made whole was St. Paul entitled to payment on its subrogated interest. The trial court held that the distribution procedure set forth in sec. 102.29(1) supersedes common-law principles of subrogation and ordered that St. Paul be reimbursed $33,687.23.

Section 102.29(1), Stats., of the Worker's Compensation Act, allows commencement of an action against a third party even though a claim for compensation has been made against the employer. The statute also sets forth a distribution procedure for any settlement funds resulting from third party liability:

> If notice is given as provided in this subsection, the liability of the tort-feasor shall be determined as to all parties having a right to make claim, and irrespective of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows: After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employe or the employe's personal representative or other person entitled to bring action. Out of the balance

13

remaining, the employer or insurance carrier shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter. . . . Any balance remaining shall be paid to the employe or the employe's personal representative or other person entitled to bring action.

Sec. 102.29(1). The parties do not dispute that this statute applies, but they do disagree as to *when* it applies.

Donna argues that equity requires that she be made whole under *Garrity v. Rural Mutual Insurance Co.,* 77 Wis. 2d 537, 253 N.W.2d 512 (1977), and *Rimes v. State Farm Mutual Automobile Insurance Co.,* 106 Wis. 2d 263, 316 N.W.2d 348 (1982), before St. Paul has a right to reimbursement. St. Paul, on the other hand, argues that common-law principles of equity and subrogation are superseded here because the legislature has specifically provided reimbursement rights for worker's compensation insurance carriers in sec. 102.29(1), Stats. We agree with St. Paul's position.

We begin by noting that the *Garrity* and *Rimes* cases do not address the Worker's Compensation Act and the disbursement of funds under sec. 102.29(1), Stats. Our supreme court has recently stated that *Garrity* and *Rimes* "rest upon the application of equitable principles to a particular set of circumstances." *Vogt v. Schroeder,* 129 Wis. 2d 3, 13, 383 N.W.2d 876, 880 (1986). The supreme court explained that "[t]he teaching of *Garrity* and *Rimes* is not the simplistic rule that is urged . . . to be of universal application in all subrogation cases. Rather, it is that subrogation depends upon the application of equitable principles to the facts of the case." *Id.* at 15, 383 N.W.2d at 881. The court made it clear in *Vogt,* therefore, that the holdings of

*Garrity* and *Rimes* do not apply in all subrogation cases.

The Worker's Compensation Act is a legislatively created substitute for the common law rather than a supplement thereto. *Larson v. DILHR,* 76 Wis. 2d 595, 622, 252 N.W.2d 33, 46 (1977). Moreover, worker's compensation is wholly statutory and questions regarding public policy should be determined by the legislature, not the courts. *Id.* at 621, 252 N.W.2d at 45. *See also Jadofsky v. Iowa Kemper Insurance Co.,* 120 Wis. 2d 494, 497–98, 355 N.W.2d 550, 552 (Ct. App. 1984); *Jaeger Baking Co. v. Kretschmann,* 96 Wis. 2d 590, 602, 292 N.W.2d 622, 628 (1980). In addition, "worker's compensation laws constitute an all-pervasive legislative scheme which attempts to effect a compromise between the employer and the employee's competing interests." *Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 180, 290 N.W.2d 276, 279–80 (1980). Worker's compensation laws are economic regulations whereby the legislature has balanced competing societal interests. *Id.* at 180, 290 N.W.2d at 280.

We recognize that under common-law principles of subrogation, a subrogor must be made whole before the subrogee is entitled to reimbursement. *See Garrity,* 77 Wis. 2d at 541–43, 253 N.W.2d at 514–15. However, given the nature of worker's compensation laws as explained above, we are unpersuaded that the common-law principle of "being made whole" has applicability

here.[2] Rather, sec. 102.29(1), Stats., is a legislatively created exception to common-law rules of subrogation. The legislature has considered the equities and has balanced the competing interests. We will not interfere with the distribution scheme set forth in sec. 102.29(1) by engrafting common-law principles upon the legislative scheme.

We note that a similar conclusion was reached by the court of appeals in *Waukesha County v. Johnson,* 107 Wis. 2d 155, 320 N.W.2d 1 (Ct. App. 1982), albeit in a different statutory setting. In *Johnson,* the court held that the reimbursement formula set forth in sec. 49.65, Stats., which is similar to that in sec. 102.29, Stats., rendered common-law subrogation principles inapplicable to those seeking reimbursement. *Id.* at 161–62, 320 N.W.2d at 3–4.

We are persuaded that the distribution scheme set forth in sec. 102.29(1), Stats., renders common-law principles of subrogation inapplicable. We therefore affirm the trial court's order that the settlement funds be distributed according to sec. 102.29(1). [3]

*By the Court.*—Order affirmed.

---

[2] We note that Robert L. Elliott, a respected and published member of the trial bar, has opined otherwise. Mr. Elliott has directly addressed the issue raised here and has concluded "that an insurer or employer may have its subrogated claim under sec. 102.29(1), Stats., subordinated until the employee is made whole." *See* Elliott, "Subrogation in Wisconsin, or What 'Rimes' With Confusion?" *Wis. Bar Bul.,* Nov. 1983 at 13, 67. Mr. Elliott's article predates the supreme court's decision in *Vogt.*

[3] The appellants also complain that the trial court failed to allocate a portion of the settlement to Donna for loss of consortium

pursuant to *DeMeulenaere v. Transport Insurance Co.,* 116 Wis. 2d 322, 342 N.W.2d 56 (Ct. App. 1983). However, the record forwarded to us for purposes of appeal (and apparently the trial court record based upon the docket entries) does not reflect whether any of the settlement proceeds were allocated to a claim for loss of consortium. We therefore choose not to address this issue on appeal.