484 S.E.2d 490

**Roberta Banks BUSH, Plaintiff Below, Appellant,**

v.

**Andrew N. RICHARDSON, Commissioner, West Virginia Bureau of Employment Programs, Division of Workers' Compensation, Defendant Below, Appellee.**

No. 23702.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1997.

Decided March 21, 1997.

Darrell V. McGraw, Jr., Attorney General, Garrett M. Jacobs, Assistant Attorney General, Employment Programs Litigation Unit, Charleston, Laura Ellen Buchko, Legal Counsel, Workers Compensation Division, Charleston, for Appellee.

Thomas P. Maroney, J. Robert Weaver, Thomas P. Maroney, L.C., Charleston, for Amicus Curiae The West Virginia Labor Federation, AFL–CIO.

Barry Hill, Gompers, McCarthy, Hill & McClure, Weirton, Chairman of Amicus Curiae The West Virginia Trial Lawyers Association, Amicus Curiae Committee.

McHUGH, Justice:

The appellant, Roberta Banks Bush, appeals the January 9, 1996 order of the Circuit Court of Wood County which held in a declaratory judgment action that the appellant need not be fully compensated for her injuries (made whole) by the moneys received from a third-party tortfeasor before the appellee, Andrew N. Richardson, the Commissioner of the West Virginia Bureau of Employment Programs, Division of Workers' Compensation (hereinafter the "Commissioner"), may enforce a statutory subrogation lien pursuant to *W. Va.Code*, 23–2A–1 [1990] upon such moneys. For reasons explained below, we affirm the January 9, 1996 order of the circuit court.

**I**

On February 13, 1995, the appellant was involved in a car accident while within the scope of her employment when an automobile driven by Paul J. Chambers (hereinafter "Chambers") struck her vehicle head on. The appellant suffered serious injuries and, thus, subsequently filed a workers' compensation claim as well as a claim against Chambers.

The Commissioner states that as of December 5, 1996,[1] Workers' Compensation had paid the appellant $142,565.39 in medical benefits as well as $9,774.44 in temporary total disability benefits.

George E. Lantz, Lantz & Tebay, Parkersburg, for Appellant.

---

1. December 5, 1996 is the date the Commissioner filed his brief with this Court.

In the action brought against Chambers, the responsible third party, the appellant sought damages for permanent and other injuries; past and future medical expenses; loss of earnings to date and future loss of earning capacity; and past and future pain, suffering, disability and loss of enjoyment of life. At the time of the accident Chambers had in effect an automobile liability insurance policy with Allstate Insurance Company (hereinafter "Allstate") which provided maximum coverage limits for a single person claim in the amount of $100,000.00. The appellant had no underinsured insurance coverage which would have been applicable to her claim arising out of this accident. The appellant maintained in the trial court below that the maximum amount she could recover in her action against Chambers was $100,-000.00, the policy limits of Chamber's Allstate policy, which would not fully compensate her for her injuries.

Pursuant to *W. Va.Code*, 23–2A–1 [1990], the Commissioner notified the appellant that he had a statutory lien against any moneys recovered by her from Chambers and/or Allstate. The appellant disagreed with the Commissioner and, thus, filed a declaratory judgment action in which she maintained that because the maximum amount of money that she could recover from Chambers and/or Allstate would not fully compensate her for her claim arising out of the accident, the Commissioner was not legally entitled to recover any part of the moneys received by her from Chambers and/or Allstate. The appellant asserted that until she was made whole by Chambers and/or Allstate for her damages arising out of the car accident, the Commissioner was not entitled to subrogation.

The trial court below stated that it "appears to be undisputed that the [appellant] was not at fault in [the] accident." Additionally, the trial court noted that the appellant had "reached a settlement with the person who was at fault in the automobile accident [Chambers] and will receive the policy limits of that person's liability insurance ($100,-000)." For purposes of its order, the trial

court assumed that the appellant would not be made whole by the available insurance proceeds and decided not to address whether the responsible third party (Chambers) was judgment proof. Based on the above facts, the trial court concluded in its January 9, 1996 order that the Commissioner was entitled to subrogation pursuant to *W. Va.Code*, 23–2A–1 [1990] regardless of whether the appellant was made whole by the moneys available to her. It is this conclusion that the appellant appeals.

## II

### *Standard of Review*

■■■ We are mindful that "[a] circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995). *See also* syl. pt. 1, *Randolph County Board of Educ. v. Adams*, 196 W.Va. 9, 467 S.E.2d 150 (1995). However, any determinations of fact made by the circuit court are reviewed pursuant to the clearly erroneous standard. *Cox*, 195 W.Va. at 612, 466 S.E.2d at 463.

### *Subrogation and the made-whole rule*

■■■ The sole issue before us is whether the equitable made-whole rule applies in a subrogation claim made by the Commissioner pursuant to *W. Va.Code*, 23–2A–1 [1990]. At the outset, we note that workers' compensation "is entirely a statutory creature[.]" *National Fruit Product Co., Inc. v. Baltimore and Ohio Railroad Co.*, 174 W.Va. 759, 765, 329 S.E.2d 125, 132 (1985) (footnote omitted). Thus, whether the Commissioner is accorded the right to subrogation, and if so, what form it will take are matters properly left for the legislature to determine. *Id.* See also *Jones v. Laird Foundation, Inc.*, 156 W.Va. 479, 490, 195 S.E.2d 821, 828 (1973) (Sprouse, J., concurring). In 1990 the legislature enacted *W. Va.Code*, 23–2A–1, which gave the Commissioner the right to subrogation when a workers' compensation claimant recovers moneys from a third-party tortfeasor.[2] The

---

2. Prior to the enactment of *W. Va.Code*, 23–2A–1 in 1990 the Commissioner did not have the right to seek subrogation. Indeed, this Court refused to recognize such a right in *National Fruit Prod-*

*uct Co., Inc. v. Baltimore and Ohio Railroad Co.*, 174 W.Va. 759, 765, 329 S.E.2d 125, 132 (1985): "[W]e have consistently held that in the absence of a subrogation statute, an employee is entitled

question in this appeal is whether the legislature intended for the traditional equitable principles of subrogation to apply in a subrogation claim made by the Commissioner pursuant to that *Code* section.

The appellant maintains that the following language found in subsection (b) of *W. Va. Code,* 23–2A–1 [1990] has not altered the equitable principles which are applicable in a subrogation claim:

(b) Notwithstanding the provisions of subsection (a) of this section, if an injured worker, his or her dependents or his or her personal representative makes a claim against said third party and recovers any sum thereby, *the commissioner or a self-insured employer shall be allowed subrogation with regard to medical benefits paid as of the date of the recovery:* Provided, That *under no circumstances shall any moneys received by the commissioner or self-insured employer as subrogation to*

*medical benefits expended on behalf of the injured or deceased worker exceed fifty percent of the amount received from the third party as a result of the claim made by the injured worker,* his or her dependents or personal representative, after payment of attorney's fees and costs, if such exist.[3]

(emphasis and footnote added).

As this Court explained in syl. pt. 4 of *Ray v. Donohew,* 177 W.Va. 441, 352 S.E.2d 729 (1986),

'[t]he doctrine of subrogation is that one who has the right to pay, and does pay, a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other.' Syl. Pt. 1, *Bassett v. Streight,* 78 W.Va. 262, 88 S.E. 848 (1916).

*See also Porter v. McPherson,* 198 W.Va. 158, 162, 479 S.E.2d 668, 672 (1996). The

to the full amount of damages awarded to him against a third party without any reduction for workers' compensation benefits received by the employee as a result of the injury." This Court went on to explain why it would not recognize a subrogation claim made by the Commissioner in the absence of a subrogation statute:

We have traditionally stated that our workers' compensation system is entirely a statutory creature and for this reason we feel that judicial intrusion into the statutory framework, particularly on so complex an issue, is unwarranted. Subrogation statutes are of necessity extremely complex and detailed because they must be designed to anticipate all of the multi-faceted problems that may occur.

*Id.* (footnotes omitted). *See also Jones v. Laird Foundation, Inc.,* 156 W.Va. 479, 490, 195 S.E.2d 821, 828 (1973) (Sprouse, J., concurring) (In a concurring opinion to the majority which held that an employee was allowed to maintain an action against a physician who aggravated the employee's original injury even though the employee received workers' compensation benefits for the original and aggravated injury, Justice Sprouse noted: "There may be serious doubt about the desirability of permitting double recovery even in this limited area of the law. This, however, is strictly a matter within the prerogative of the Legislature.")

When *National Fruit Product Co.* was written, West Virginia, Georgia and Ohio were the only three states that did not have statutes giving the "employers the right, through subrogation, to recover workers' compensation benefits paid to employees injured by a third-party's negligence." *Id.* at 761, 329 S.E.2d at 127. However, as of today, West Virginia, Georgia and Ohio all have

subrogation statutes under their respective workers' compensation acts. *See* 2A Arthur Larson, *The Law of Workmen's Compensation* § 71.30 at 14–80 n. 11 (Supp. November 1996).

3. Subsections (a), (c), and (d) of *W. Va.Code,* 23–2A–1 [1990] state:

(a) Where a compensable injury or death is caused, in whole or in part, by the act or omission of a third party, the injured worker, or if he or she is deceased or physically or mentally incompetent, his dependents or personal representative shall be entitled to compensation under the provisions of this chapter and shall not by having received same be precluded from making claim against said third party.

. . . .

(c) In the event that an injured worker, his or her dependents or personal representative makes a claim against a third party, there shall be, and there is hereby created, a statutory subrogation lien upon such moneys received which shall exist in favor of the commissioner or self-insured employer. Any injured worker, his or her dependents or personal representative who receives moneys in settlement in any manner of a claim against a third party shall remain subject to the subrogation lien until payment in full of the amount permitted to be subrogated under subsection (b) of this section is paid.

(d) The right of subrogation granted by the provisions of this section shall not attach to any claim arising from a right of action which arose or occurred, in whole or in part, prior to the effective date of this article.

doctrine of subrogation originated from equity rather than out of statute or common law and is related closely to the equitable principles of "restitution" and "unjust enrichment." *Porter,* 198 W.Va. at 162 n. 8, 479 S.E.2d at 672 n. 8 (*citing* 83 C.J.S. *Subrogation* § 2 (1953)). The purpose of subrogation is "to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." 83 C.J.S. *Subrogation* § 2 at 582 (1953) (footnote omitted). Because the doctrine of subrogation is based in equity, "[t]he right of subrogation depends upon the facts and circumstances of each particular case. *Huggins v. Fitzpatrick,* 102 W.Va. 224, 228, 135 S.E. 19, 20 (1926)." Syl. pt. 3, *Ray, supra.*

■ Generally, subrogation is limited by what is referred to as the made-whole rule. *Porter,* 198 W.Va. at 162, 479 S.E.2d at 672. We have explained the made-whole rule in insurance cases as meaning " '[u]nder general principles of equity, *in the absence of statutory law* or valid contractual obligations *to the contrary,* an insured must be fully compensated for injuries or losses sustained (made whole) before the subrogation rights of an insurance carrier arise.' " *Id.* (*quoting Wine v. Globe American Casualty Co.,* 917 S.W.2d 558, 562 (Ky.1996)) (emphasis added). The rationale given for applying the made-whole rule in insurance cases is " 'where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.' " *Waukesha County v. Johnson,* 107 Wis.2d 155, 320 N.W.2d 1, 3 (Ct.App.1982) (*quoting Garrity v. Rural Mut. Ins. Co.,* 77 Wis.2d 537, 253 N.W.2d 512, 514 (1977)) (footnote omitted).

The appellant relies on this Court's holding in *Kittle v. Icard,* 185 W.Va. 126, 405 S.E.2d 456 (1991) to support her argument that she must be made whole by the moneys received from the third-party tortfeasor before the Commissioner is entitled to subrogation. The question in *Kittle* was whether the made-whole rule applied in a subrogation claim arising out of *W. Va.Code,* 9–5–11 (1990). More specifically, this Court was confronted with whether the department of human services was entitled to subrogation

pursuant to *W. Va.Code,* 9–5–11 for Medicaid medical expenses it had paid on behalf of a child who had been struck by a car when the child's recovery from the third-party defendant did not fully compensate the child for his injuries.

The statute at issue in *Kittle* simply stated, in relevant part: " '*The department [of human services] shall be legally subrogated* to the rights of the recipient against the person so liable, but only to the extent of the reasonable value of the medical assistance paid and attributable to such ... injury[.]' " *W. Va. Code,* 9–5–11(a), as quoted in *Kittle,* 185 W.Va. at 129–30, 405 S.E.2d at 459–60 (emphasis added). In determining the meaning of subrogation as that term was used in *W. Va.Code,* 9–5–11, this Court quoted with approval the following statement by the Court of Appeals of New Mexico in *White v. Sutherland,* 92 N.M. 187, 585 P.2d 331, 334 (Ct. App.1978), *cert. denied, Health and Social Services Dept. v. White,* 92 N.M. 79, 582 P.2d 1292 (1978): " 'Absent a clearly expressed legislative intent requiring otherwise, "subrogated" is to be given its usual, ordinary meaning.' " *Kittle,* 185 W.Va. at 130, 405 S.E.2d at 460. Because the legislature in *W. Va.Code,* 9–5–11 did not expressly indicate that the usual, ordinary meaning of subrogation was modified, this Court concluded that the made-whole rule applied in a subrogation claim brought by the department of human services. Accordingly, this Court held in *Kittle* that the child must be fully compensated by the third-party defendant before the department of human services would be entitled to seek reimbursement from the moneys received by the child from the third-party defendant. *Id.*

The appellant argues that the reasoning in *Kittle, supra,* is applicable to her case: The usual and ordinary meaning of "subrogation" as it is used by the legislature in *W. Va.Code,* 23–2A–1(b) [1990] contemplates that the made-whole rule is applicable. Conversely, the Commissioner argues that the legislature expressly altered the usual, ordinary meaning of subrogation in *W. Va.Code,* 23–2A–1(b) [1990] by mandating that the Commissioner in a subrogation claim would be limited to recovering only the medical benefits paid as

of the date of recovery, and could not collect more than fifty percent of the amount received from the third party as a result of a claim made by the injured worker. The Commissioner maintains that these limitations on his right to subrogation make the made-whole rule inapplicable. Thus, as previously indicated, the Commissioner concludes that the appellant's reliance on *Kittle* is misplaced.

We agree with the Commissioner. In arriving at our conclusion in *Kittle*, this Court distinguished the case of *Waukesha County, supra,* from the facts then before us. *See Kittle,* 185 W.Va. at 131–32, 405 S.E.2d at 461–62. Our discussion in *Kittle* of *Waukesha County* is important because *Waukesha County,* is factually more like the case before us than *Kittle.*

In *Waukesha County* the Supreme Court of Wisconsin held that the made-whole rule was inapplicable in the case before it. The relevant statute in *Waukesha County, Wis. Stat.* § 49.65 (1977), provided that the county was entitled to be reimbursed for medical assistance payments from any insurance settlements obtained by the recipients of such payments. *Waukesha County,* 320 N.W.2d at 2 n. 1. The Supreme Court of Wisconsin found that *Wis. Stat.* § 49.65 (1977) rendered normal subrogation principles inapplicable because the statute specifically prioritized the rights of the county and public assistance recipient to maintain actions and recover from a third-party tortfeasor: "[*Wis. Stat.*]

Section 49.65 provides that a county may maintain its own action, provided that the recipient is made a party; that the county has equal control over the claim; and, that *the county must be paid before the recipient obtains compensation.*"[4]  *Id.* at 4 (emphasis added).

This Court in *Kittle* stated that, unlike the Wisconsin statute at issue in *Waukesha County, W. Va.Code,* 9–5–11

> contains no prioritization provisions and does not specifically state that normal subrogation principles are inapplicable to agencies seeking reimbursement of medical assistance payments. Rather, *W. Va. Code,* 9–5–11 is closer to those statutes ... wherein state courts noted the legislature's use of the concept of subrogation and held that because the legislature had not provided that normal subrogation principles should not be applied, the court would apply those equitable principles.

*Kittle,* 185 W.Va. at 132, 405 S.E.2d at 462 (*citing Coplien v. Dept. of Health & Social Services,* 119 Wis.2d 52, 349 N.W.2d 92, 95 (Ct.App.1984)).

However, in the case before us, the language in *W. Va.Code,* 23–2A–1(b) [1990] is more like the statute at issue in *Waukesha County,* than the statute at issue in *Kittle, supra.* The legislature did not simply use the term "subrogation" in *W. Va.Code,* 23–2A–1(b) [1990] without more. Instead, *W. Va.Code,* 23–2A–1(b), like the relevant statute in *Waukesha County,* prioritized the

---

**4.** *Wis. Stat.* § 49.65 (1977) states, in relevant part, as quoted in *Waukesha County,* 320 N.W.2d at 2 n. 1:

> Third party liability. (1) Subrogation. The department, county or municipality providing any public assistance authorized under this chapter, including medical assistance, as a result of the occurrence of an injury, sickness or death which results in a possible recovery or indemnity from a 3rd party, including an insurer, may make a claim or maintain an action in tort against the 3rd party.
>
> (2) Assignment of actions. The department, county or municipality providing any public assistance authorized under this chapter, including medical assistance, as a result of the occurrence of injury, sickness or death which results in a possible recovery of indemnity from a 3rd party, including an insurer, may require an assignment from the applicant or recipient of such public assistance or legally

appointed representative of the incompetent or deceased applicant or recipient giving it the right to make a claim against the 3rd party.

> (3) Control of action. The applicant or recipient or any party having a right under this section may make a claim against the 3rd party or may commence an action and shall join the other party as provided under s. 803.03(2). Each shall have an equal voice in the prosecution of such claim or action.
>
> (4) Recovery; how computed. *Reasonable costs of collection including attorney's fees shall be deducted first. The amount of assistance granted as result of the occurrence of the injury, sickness or death shall be deducted next and the remainder shall be paid to the public assistance recipient.* The amount of the medical assistance funds recovered shall be subject to fees and proration as set forth in sub. (6). (emphasis added).

rights of the Commissioner and the workers' compensation claimant. Thus, the legislature by limiting the Commissioner in *W. Va. Code*, 23–2A–1(b) [1990] to seeking only the medical benefits paid as of the date of recovery and to seeking no more than fifty percent of what the claimant recovers from the third-party defendant, expressly rendered the made-whole rule inapplicable in a subrogation claim brought by the Commissioner pursuant to that *Code* section.

Similarly, courts in other jurisdictions have concluded that the made-whole rule was altered by their workers' compensation statutes providing for subrogation. For example, in *Waith v. Workmen's Compensation Bureau*, 409 N.W.2d 94, 96 (N.D.1987), the Supreme Court of North Dakota examined whether the Workmen's Compensation Bureau (hereinafter "the Bureau") "should receive a prorated subrogation interest when a benefit recipient recovers against a third-party tortfeasor less than the total damages sustained by the recipient because the tortfeasor is protected by a statutory maximum liability limit." The Bureau's subrogation rights were authorized by *N.D. Cent. Code*, § 65–01–09 which stated, as quoted by the Supreme Court of North Dakota:

> 'The fund shall be subrogated to the rights of the injured employee or his dependents *to the extent of fifty percent of the damages recovered* up to a maximum of the total amount it has paid or would otherwise pay in the future in compensation and benefits for the injured employee. The bureau's subrogation interest may not be reduced by settlement, compromise, or judgment.'

*Waith*, 409 N.W.2d at 96 (emphasis provided). The Supreme Court of North Dakota concluded that because "[t]he provision neither permits nor requires the Bureau's subrogation interest to be further reduced when the recipient's recovery from the third-party tortfeasor does not constitute a total recovery of the damages sustained by the recipient[,]" the Bureau was entitled to subrogation even though the recipient was not made whole by the settlement with the third-party tortfeasor. *Id.* at 96.

Likewise, in *Martinez v. Ashland Oil, Inc.*, 132 Wis.2d 11, 390 N.W.2d 72 (Ct.App.1986) the Court of Appeals of Wisconsin was confronted with whether a worker's compensation claimant must be made whole before the workers' compensation insurance carrier was entitled to reimbursement from the settlement proceeds from a third party. The worker's compensation statute at issue stated:

> If notice is given as provided in this subsection, the liability of the tort-feasor shall be determined as to all parties having a right to make claim, and irrespective of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows: *After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employe[e]* or the employe[e]'s personal representative or other person entitled to bring action. *Out of the balance remaining, the employer or insurance carrier shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter. . . .* Any balance remaining shall be paid to the employe[e] or the employe[e]'s personal representative or other person entitled to bring action.

*Wis. Stat.* § 102.29(1) as quoted in *Martinez*, 390 N.W.2d at 73 (emphasis added).

In concluding that the made-whole rule was inapplicable, the Court of Appeals of Wisconsin explained that workers' compensation laws are wholly statutory and that "questions regarding public policy should be determined by the legislature, not the courts." *Id.* at 74 (citing *Larson v. DILHR*, 76 Wis.2d 595, 252 N.W.2d 33, 45 (1977)). The court in *Martinez* held that the legislature, by specifically providing reimbursement rights for workers' compensation insurance carriers in *Wis. Stat.* § 102.29(1), made normal subrogation principles inapplicable. *Id.* *Accord Nelson v. Rothering*, 174 Wis.2d 296, 496 N.W.2d 87, 92 (1993). *See also McCarter v. Alaska National Insurance Co.*, 883 P.2d 986 (Alaska 1994); *Rhode v. Beacon Sales Co.*, 416 Mass. 14, 616 N.E.2d 103 (1993). *See generally* 2A Arthur Larson, *The Law of Workmen's Compensation* § 74.31(b) (1996)

(Analyzes the different state workers' compensation statutes providing for subrogation and concludes that "[r]eimbursement of the compensation payor according to the terms of the statute is mandatory, and cannot be modified by courts." (footnote omitted)).[5]

Returning to the case before us, our statute, *W. Va.Code*, 23–2A–1 [1990], similar to the statutes discussed above, prioritizes the rights of the Commissioner and the workers' compensation claimant to the moneys collected from a third-party tortfeasor. In that our workers' compensation law is statutory in nature, we conclude that the parties shall follow the prioritization scheme expressly set forth by the legislature in *W. Va.Code*, 23–2A–1 [1990]. *See* syl. pt. 1, *State v. Highland*, 174 W.Va. 525, 327 S.E.2d 703 (1985) ("'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. pt. 1 *State v. Warner*, 172 W.Va. 502, 308 S.E.2d 142 (1983)."). *See also* n. 2, *supra.*

Accordingly, we hold that by the enactment of *W. Va.Code*, 23–2A–1 [1990] which provides that the Commissioner of Workers' Compensation "shall be allowed subrogation" when a workers' compensation claimant collects moneys from a third-party tortfeasor,

the legislature expressly modified the usual, ordinary meaning of subrogation as it is used in that *Code* section by making the made-whole rule inapplicable. Therefore, the following provisions set forth by the legislature in *W. Va.Code*, 23–2A–1(b) [1990] shall be followed: "[T]he *commissioner* or a self-insured employer *shall be allowed subrogation with regard to medical benefits paid as of the date of the recovery:* Provided, That *under no circumstances shall any moneys received by the commissioner or self-insured employer as subrogation to medical benefits expended on behalf of the injured or deceased worker exceed fifty percent of the amount received from the third party* as a result of the claim made by the injured worker, his or her dependents or personal representative, after payment of attorney's fees and costs, if such exist." (emphasis added). Based on all of the above, we affirm the January 9, 1996 order of the Circuit Court of Wood County.

Affirmed.

---

5. At least one court has held that its state legislature could not give the workers' compensation agency a statutory right to subrogation until the workers' compensation claimant has obtained "full legal redress" for his or her injuries. In *Francetich v. State Compensation Mutual Insurance Fund*, 252 Mont. 215, 827 P.2d 1279 (1992) the Supreme Court of Montana held that the following statutory language was unconstitutional: "'The insurer is entitled to full subrogation rights under this section, even though the claimant is able to demonstrate damages in excess of the workers' compensation benefits and the third-party recovery combined.'" *Id.* at 1282 (quoting *Mont.Code Ann.*, § 39–71–414(6)(a) [1987]). The court based the above conclusion on article II, section 16 of the *Montana Constitution* which provides, in relevant part:

Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. *No person shall be deprived of this full legal redress* for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state....

(emphasis added). There is no comparable provision relating to workers' compensation in our state constitution. Thus, *Francetich, supra*, is distinguishable from the case at bar.