Elmer SKIROWSKI, Plaintiff-Respondent,†

v.

EMPLOYERS MUTUAL CASUALTY COMPANY, a foreign insurance corporation, Defendant-Appellant,

The TRAVELERS INDEMNITY COMPANY, a foreign insurance corporation, International Industrial Products Corporation, Inc., Defendants-Third Party Plaintiffs,

v.

LOMPAS, a foreign corporation, Third Party Defendant.

Court of Appeals

*No. 90–0133. Submitted on briefs May 24, 1990.—Decided September 20, 1990*

(Also reported in 462 N.W.2d 245.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *John C. Possi* of *Mueller, Goss & Darnieder, S.C.* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *James R. Jansen* of *Habush, Habush & Davis, S.C.* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   Employers Mutual Casualty Company appeals from an order distributing the proceeds of a structured settlement in a personal injury case. The issue is whether the settlement was apportioned between the injured employee and the employer's worker's compensation carrier in compliance with sec. 102.29, Stats. We conclude that it was not, and we reverse the order.

Elmer Skirowski suffered a serious injury while operating a machine in the course of his employment. He sued the company that leased the machine to his employer and its liability insurer. The case was settled prior to trial. The settlement included both an immediate cash payment and a "structured" portion which was to be paid to Skirowski in monthly installments over a period of several years. The immediate and deferred por-

tions of the settlement had a combined present value of $550,000.

Employers had made worker's compensation payments totaling $39,667.88 to Skirowski and was required to approve the settlement because of its statutory right to reimbursement for the payments. Employers disagreed with the manner in which it was to be reimbursed under the terms of the settlement and refused to approve it. Skirowski then successfully sought approval in the circuit court and obtained an order distributing the proceeds. Employers appeals.

Section 102.29(1), Stats., provides that "the proceeds [of a tort award] shall be divided as follows: [a]fter deducting the reasonable cost of collection, one-third of the remainder shall . . . be paid to the injured employe . . .. Out of the balance remaining the . . . [worker's compensation] insurance carrier shall be reimbursed for all payments made by it . . .. Any balance remaining shall be paid to the employe . . .."

In this case, because of the manner in which the settlement was structured there was not enough "upfront" cash available to give Skirowski his one-third share of the net settlement and to reimburse Employers Mutual for its expenses. As indicated, the present value of the gross settlement was $550,000. After subtracting the costs—which amounted to $190,000—the net settlement was $360,000. Subtracting the present value of the structured portion from the net settlement would leave $152,000 to be divided.[1] As a result, there was not enough money currently available to reimburse Employ-

---

| [1] Present Value of Gross Settlement | $550,000 |
|---|---|
| Estimated Costs | − 10,000 |
| | $540,000 |
| Attorney's Fees | −180,000 |

ers for its costs, which amounted to $39,667, and still give Skirowski $120,000—one-third of the $360,000 net settlement.

Since Employers was owed $39,667—which the trial court calculated as eleven percent of the $360,000 net settlement—the court ordered that Employers be paid eleven percent of the money currently available for disbursement and eleven percent of each monthly payment over time until the full amount was paid. Skirowski was to be paid eighty-nine percent of the initial cash payment and eighty-nine percent of each monthly payment. The court felt that any other method of distribution would "reward[ ] [Employers] at the expense of Skirowski . . .."

Employers maintains that the trial court's order conflicts with sec. 102.29, Stats., and *Simanek v. Miehle-Goss-Dexter,* 113 Wis. 2d 1, 334 N.W.2d 910 (1983). *Simanek* involved a structured settlement similar to the one in this case. The injured employee was to receive payments over a period of twenty years. The initial payment was limited to the amount necessary to cover costs, fees and disbursements. The employee would then receive monthly payments until he had received one-third of the net settlement (which would take eleven years). At that point payments to the employee would cease and the insurer would then receive the monthly payments until it had recouped its costs (which would take another five years). After that, the employee would resume receiving the payments.

We reversed, holding that the manner of distribution did not comply with sec. 102.29, Stats., because

| Net Settlement After Costs of Collection | $360,000 |
| Present Value of Structured Portion | −208,000 |
| Up Front Cash to be Divided | $152,000 |

"[t]he statute [does not] contemplate[ ] deferring the insurer's reimbursement until after the employee receives one-third of the post-costs settlement . . .." *Simanek*, 113 Wis. 2d at 6, 334 N.W.2d at 912. Emphasizing the "absurd[ity]" of delaying any payment to the insurer for eleven years—despite the fact that it had paid the employee's medical bills promptly—and the inequity involved in making the employee go for five years without receiving any disability benefits, we saw "no logic or justice in such an interpretation" of the statute and concluded that "the insurer and the employee should receive payments contemporaneously." *Id.* at 6–7, 334 N.W.2d at 912.

In this case, the trial court interpreted *Simanek* and sec. 102.29, Stats., read together, as "requir[ing] contemporaneous payments. Neither party should have to wait longer to receive their share than the other party. Any shortfall [in money currently available because of the structured settlement] should be shared equally . . . based upon the percentage of the total that each side will receive."

Employers contends that the trial court's order violates sec. 102.29, Stats., arguing that the statute does not permit delaying its reimbursement for many years—long after Skirowski has received considerably more than one-third of the total. Employers suggests, based on a pro-rata formula of its own devising, that we should: (1) subtract the present value of the structured settlement from the gross settlement; (2) subtract the costs of collection; (3) determine the percentage of the initial cash payment that each party would receive if there were enough money available immediately; and (4) reduce each party's share on a pro-rata basis based on the

246

money actually available for distribution.[2] Nothing in the language of the statute, however, contemplates such a complicated formula for distribution, and for us to adopt it would require that we assume a legislative role—which we cannot and will not do. We look instead for a solution based on the language of the statute.

Reading the statute as a whole, it is apparent that it seeks to accommodate the interests of both the injured employee and the compensation carrier by ensuring that the employee receives a minimum share of the proceeds of the tort recovery, and granting a right of subrogation to the worker's compensation carrier to ensure reimbursement for its expenses.

The problem is that sec. 102.29, Stats., contemplates a lump-sum award, rather than a structured award paid out over a number of years. Since the requirements

---

[2]Total Settlement                                          $550,000
   Present Value of the Structured
Settlement                                                  −208,000

   Available Cash                                            $342,000
   Costs of Collection                                      −190,000

   Balance                                                   $152,000

Assuming sufficient available cash under statutory formula ($159,667.88):

$120,000 to Elmer Skirowski (75% of $159,667)
  39,667 to Employers Mutual (25% of $159,667)
$159,667

Pro-rata formula to be applied because insufficient cash is available ($152,000):

$114,000 to Elmer Skirowski (75% of $152,000)
  38,000 to Employers Mutual (25% of 152,000)
$152,000

of the statute cannot be altered or overridden by a private agreement, absent consent of all the parties, if a structured settlement is to be used in such cases, its terms must comply with sec. 102.29, Stats.

We recognized in *Simanek* that:

> The statute provides that the injured employee shall receive one-third of the balance after the reasonable costs of collection are paid. *Out of the remaining two-thirds, the employer's insurer is to be reimbursed.* Any remaining amount is then paid to the employee. If we give the statute its ordinary and accepted meaning, as we must, it merely provides a method of computation to ensure a minimum payment to the injured employee, regardless of the insurer's disbursements and a contemporaneous disbursement to the insurer from the computed balance. *The statute neither mandates nor contemplates deferring the insurer's reimbursement until after the employee receives one-third of the post-costs settlement amount. Id.* at 5-6, 334 N.W.2d at 912 [emphasis added; footnote omitted].

/ That structured settlements such as the one used in this case were never contemplated by the drafters of sec. 102.29, Stats., is apparent when one considers the statute's direction to pay the employee "one-third of *the remainder*" after first deducting collection costs. Where the settlement is in a lump sum, no problem exists. But where, as here, there is a partial payment of the settled amount, followed by many years of deferred payments, it is unclear whether the "remainder" from which the employee's initial one-third is taken means the remainder of the front payment or, as the trial court ruled, the gross settlement (net of collection costs) that is to be paid over time.

It may be said, then, that the word "remainder" is ambiguous when applied to the terms of the settlement in this case. And since, aside from *Simanek,* which is silent on the point, no cases exist interpreting the word, we construe it in light of the purpose of the statute which, as we noted in *Simanek,* is to ensure a minimum payment to the injured employee, regardless of the insurer's disbursements, and "a contemporaneous disbursement to the insurer from the computed balance." *Simanek,* 113 Wis. 2d at 6, 334 N.W.2d at 912.

We also said in *Simanek* that the statute does not contemplate deferring the insurer's reimbursement until after the employee receives his or her full one-third. *Id.* at 6, 334 N.W.2d at 912. This is consistent with our holding in *Martinez v. Ashland Oil, Inc.,* 132 Wis. 2d 11, 15–16, 390 N.W.2d 72, 74 (Ct. App. 1986), where we ruled that the common law principle requiring injured persons to be "made whole" prior to reimbursing a subrogee has no application to distributions under sec. 102.29, Stats.

We conclude, therefore, that, as applied to the structured settlement in this case, the "remainder" from which the employee is to receive his or her first one-third under sec. 102.29, Stats., is the remainder of the front payment, after deduction of collection costs.

If the statute does not contemplate putting off the insurer's reimbursement until after the employee receives one-third of the post-costs settlement amount, neither does it contemplate deferring that reimbursement, in whole or in part, to some point several years away simply because the other parties have so agreed. "The parties may *consent* to a division of proceeds different from that in the statute, but absent consent of all the parties, the statute controls." *Simanek,* 113 Wis. 2d at 6, 334 N.W.2d at 912 (emphasis in original).

The same may be said here. If all the parties—including Employers—agree to a settlement that contemplates a method of distribution differing from that directed by sec. 102.29, Stats., they may do so. But absent a unanimous agreement, the statute controls. And it requires reimbursement of amounts paid out by the insurer after deduction of collection costs and payment of the "minimum" one-third amount to the employee. The employee then receives the remainder—immediately where the settlement is paid in a lump-sum amount, and over time where, as here, the employee and the tort defendant wish to structure the settlement over a period of years.

The parties may elect to follow the latter course—as long as they all agree. The employee may agree to take something less than one-third of the net present value of the settlement out of the front money, or the insurer may allow that one-third to be paid and negotiate the remainder of its reimbursement as it sees fit. In the absence of any such agreement, however, sec. 102.29, Stats., and *Simanek* require that if the settled amount is adequate to fully reimburse the insurer after deduction of collection costs and the employee's initial one-third—as it is in this case—the employee and the tort defendant cannot deprive the insurer of its right to that reimbursement without its consent.

While our interpretation and application of the statutory formula satisfies the insurer's claim at the outset, we disagree with the trial court's comment that it rewards Employers at Skirowski's expense. It neither rewards nor penalizes either party, for it follows the statutory mandate and thus fulfills the statute's recognized equitable purpose as set forth earlier in this opinion. And, as we have noted, it is consistent with *Simanek.*

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.