506 S.E.2d 96

Cecil William CART, II, Plaintiff Below, Appellee,

v.

GENERAL ELECTRIC COMPANY, Wean United, Inc., Wean, Incorporated; United Engineering, Inc., and S & C Electronics, Inc., Defendants Below, Appellees,

INCO Alloys International, Inc., Appellant.

No. 24016.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1998.

Decided July 10, 1998.

**60**

J. William St. Clair, St. Clair & Levine, Huntington, for Appellee Cart.

Michele Grinberg, Flaherty, Sensabaugh & Bonasso, Charleston, for Wean United, Wean, Inc. and United Engineering.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, for S & C Electronics.

Patricia Johnson, Robert H. Sweeney, Jr., Patricia A. Jennings, Jenkins, Fenstermaker, Krieger, Kayes & Agee, Huntington, for INCO Alloys.

PER CURIAM: [1]

Inco Alloys International (hereinafter "Appellant" or "Inco") appeals a May 23, 1996, decision of the Circuit Court of Cabell County denying Inco the right to a subrogation lien upon a settlement amount received in a civil action filed by Cecil William Cart, II, (hereinafter "Appellee"). The Appellant contends that the lower court erroneously deprived it of the right to the subrogation lien. We agree and reverse the decision of the lower court and remand for reinstatement of the subrogation lien.

I.

On August 12, 1990, the Appellee, an electrician employed by Inco at Inco's Hot Strip Mill facility in Huntington, West Virginia, was injured in an electrical fire and explosion while cleaning a silicon control rectifier (SCR).[2] Because the Appellee's injuries occurred during the course and scope of his employment, his medical bills of $83,198.02 were paid by Inco, a self-insured employer under West Virginia Code § 23-2-9 (1994).

On June 17, 1992, the Appellee initiated a civil action in the Circuit Court of Cabell County against (1) General Electric Company (hereinafter "GE"), as the manufacturer of the SCR, (2) Wean, Inc., the contractor responsible for the construction of the portion of the Inco facility in which the accident occurred, and (3) Inco, as the Appellee's employer. On July 9, 1992, the Appellee amended the complaint to include United Engineering and Wean United, two corporations related to Wean, Inc. A second amended complaint, in November 1992, named Prichard Electric, a contractor involved in the construction of the building, as a defendant.

After two years of discovery, the Appellee settled with Prichard Electric. On June 2, 1994, Inco was granted summary judgment. The lower court found that the Appellee's action against Inco was based upon West Virginia Code § 23-2-4(c)(2)(i) and (ii) (1994), the deliberate intent statute.[3] The

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

2. An SCR is apparently an electrical device that converts voltages for operation of the Hot Strip Mill. Evidence adduced during discovery indicated that Mr. Cart had inserted a paint brush between two energized 700 volt buss bars of a SCR, causing a short and a subsequent explosion. Mr. Cart denies that he placed a brush between the bars and maintains that a buildup of dust may have caused the explosion.

3. The West Virginia Legislature has specified that the Workers' Compensation Act is designed "to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided...." W.Va.Code § 23-4-2(c)(1). West Virginia Code § 23-4-2(c)(2)(i)–(ii) provides:

(2) The immunity from suit provided under this section and under section six-a [§ 23-2-6a], article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention." This requirement may be satisfied only if:

(i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or

lower court had previously instructed the Appellee to pursue discovery to establish the evidentiary predicates for this deliberate intent cause of action, and the lower court determined that the Appellee had been unsuccessful in establishing the statutory requirements to state a cause of action upon which relief could be granted. The lower court therefore dismissed Inco with prejudice.

On February 7, 1995, the Appellee filed a third amended complaint naming S & C Electronics, a fuse manufacturer, as a defendant. In early 1996, the Appellee settled with all remaining defendants, including GE, Wean, and S & C, for $62,500.[4] The Appellee subsequently requested the lower court to relieve him of the obligation to pay Inco monetary reimbursement owed to it as a self-insured employer under West Virginia Code § 23–2A–1(c) (1994), providing as follows:

(c) In the event that an injured worker, his or her dependents or personal representative makes a claim against a third party, there shall be, and there is hereby created, a statutory subrogation lien upon such moneys received which shall exist in favor of the commissioner or self-insured employer. Any injured worker, his or her dependents or personal representative who receives moneys in settlement in any manner of a claim against a third party shall remain subject to the subrogation lien until payment in full of the amount permitted to be subrogated under subsection (b) of this section is paid.

Section (b) of that statute provides:

(b) Notwithstanding the provisions of subsection (a) of this section, if an injured worker, his or her dependents or his or her personal representative makes a claim against said third party and recovers any sum thereby, the commissioner or a self-insured employer shall be allowed subrogation with regard to medical benefits paid as of the date of the recovery: Provided, That under no circumstances shall any moneys received by the commissioner or self-insured employer as subrogation to medical benefits expended on behalf of the injured or deceased worker exceed fifty percent of the amount received from the third party as a result of the claim made by the injured worker, his or her dependents or personal representative, after payment of attorney's fees and costs, if such exist.

■ During a May 17, 1996, hearing, the lower court entertained arguments of counsel and thereafter granted the Appellee's requested relief, setting aside Inco's subrogation lien on the settlement amount obtained by the Appellee from the other defendants. A May 23, 1996, order memorialized the ac-

proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

4. Mr. Cart informs the Court that he received only $35,452.89 of the $62,5000 settlement due to the payment of costs and expenses incurred by Mr. Cart in litigation. Therefore, pursuant to statute, the only recovery to which Inco would arguably be entitled in 50% of the amount actually received by Mr. Cart, amounting to $17,726.45.

tion of May 17, 1996, setting aside Inco's subrogation interest. The lower court apparently treated the Appellee's request for approval of the settlement as a request for summary judgment on the issue of Inco's subrogation rights, and as such, this Court's review is de novo. In syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), we explained that "[a] circuit court's entry of summary judgment is reviewed *de novo*."

## II.

▪ Inco contends that the lower court erred in finding that its subrogation interest was subject to eradication. Inco further contends that a self-insured employer is entitled to reimbursement of medical expenses paid on behalf of the employee, pursuant to the explicit language of West Virginia Code 23–2A–1(c), quoted above. The only limitation under the statute is a fifty percent cap on the net recovery, included in section (b) of the statute. Inco is thus entitled to receive no more than fifty percent of the net amount of the settlement after the deduction of attorney fees and costs, according to section (b) of the statute.

▪ The Appellant also maintains that the lower court erred in predicating its decision upon the reasoning in *Kittle v. Icard*, 185 W.Va. 126, 405 S.E.2d 456 (1991),[5] a matter involving subrogation rights of the Department of Health and Human Resources and outside the realm of workers compensation law. In *Bush v. Richardson*, 199 W.Va. 374, 484 S.E.2d 490 (1997),[6] this Court addressed the issue of whether the equitable "made-

whole rule" applies in a subrogation claim made pursuant to West Virginia Code § 23–2A–1 and determined that the right of subrogation to the employer exists even if the plaintiff/employee has not been made whole by the settlement. In syllabus point four of *Bush*, this Court explained:

> By the enactment of *W.Va.Code*, 23–2A–1 [1990], which provides that the Commissioner of Workers' Compensation "shall be allowed subrogation" when a workers' compensation claimant collects moneys from a third-party tortfeasor, the legislature expressly modified the usual, ordinary meaning of subrogation as it is used in that Code section by making the made-whole rule inapplicable. Therefore, the following provisions set forth by the legislature in *W.Va.Code*, 23–2A–1(b) [1990] shall be followed: "[T]he commissioner or a self-insured employer shall be allowed subrogation with regard to medical benefits paid as of the date of the recovery: Provided, That under no circumstances shall any moneys received by the commissioner or self-insured employer as subrogation to medical benefits expended on behalf of the injured or deceased worker exceed fifty percent of the amount received from the third party as a result of the claim made by the injured worker, his or her dependents or personal representative, after payment of attorney's fees and costs, if such exist."

The Appellee concedes upon appeal that the reasoning of the lower court regarding the "made whole" theory of *Kittle* was determined to be incorrect in *Bush*. However, the

5. In *Kittle*, guardians of a minor injured in an automobile accident requested this Court to find that because the minor had not been made whole by the settlement, the Department of Human Services should not be entitled to subrogation for medical expenses it had paid on behalf of the minor. We concluded that the trial court properly applied the "made-whole" rule to deny the Department full reimbursement for medical assistance payments from proceeds of the settlement obtained by the minor. 185 W.Va. at 134, 405 S.E.2d at 464. *Kittle* was superseded by statute, as explained in syllabus point two of *Grayam v. Department of Health and Human Resources*, 201 W.Va. 444, 498 S.E.2d 12 (1997), as follows:

> In both the 1993 and 1995 amendments to West Virginia Code § 9–5–11 (Supp.1993 & Supp.1995), the legislature rendered the made-

whole rule inapplicable by clearly and unambiguously modifying the usual and ordinary meaning of subrogation as it is used in that statute. Pursuant to these amendments, if another person is legally liable to pay for medical assistance provided by the Department of Health and Human Resources, the Department possesses a priority right to recover full reimbursement from any settlement, compromise, judgment, or award obtained from such other person or from the recipient of such assistance if he or she has been reimbursed by the other person.

6. We recognize that the lower court did not yet have the benefit of the reasoning in *Bush* when it made its decision in this matter.

Appellee forwards two alternate grounds allegedly justifying the lower court's decision, neither of which was addressed by the lower court. First, the Appellee alleges that Inco's negligence contributed to his injuries, basing this claim upon Inco's alleged failure to properly draw the wiring diagram for the relay signaling a breaker to open. While this may be a compelling hypothetical argument, we are not faced with facts sufficient to support a finding of negligence on the part of this employer; nor did the Legislature include any exceptions to entitlement to subrogation based upon the employer's alleged negligence. The lower court granted summary judgment to Inco, and that decision was not appealed.[7]

█ Moreover, we have consistently recognized that the workers compensation scheme and the immunity generated thereby are statutory creations. We have consequently deferred to the Legislature in the formulation of the intricacies of the workers compensation system.[8] For instance, prior to the enactment of West Virginia Code § 23–2A–1 in 1990, this Court explained its refusal to recognize a subrogation claim in the absence of a specific subrogation statute, as follows: "We have traditionally stated that our workers' compensation system is entirely a statutory creature and for this reason we feel that judicial intrusion into the statutory framework, particularly on so complex an issue, is unwarranted." *National Fruit Product Co., Inc. v. Baltimore and*

*Ohio Railroad Co.*, 174 W.Va. 759, 765, 329 S.E.2d 125, 132 (1985). See generally 2A Arthur Larson, The Law of Workmen's Compensation § 74.31(b) (1996) (Analyzes the various state workers' compensation statutes providing for subrogation and concludes that "[r]eimbursement of the compensation payor according to the terms of the statute is mandatory, and cannot be modified by courts.").

The Appellee also contends that Inco was instrumental in attempting to prevent any recovery by the Appellee and that such activity should prevent Inco from recovering funds under the subrogation lien.[9] Again, the statute controlling the subrogation issue does not contain equitable principles of unclean hands or any other mechanism to permit the Appellee to retain funds to which Inco is statutorily entitled. We therefore are unpersuaded by the Appellee's arguments regarding Inco's alleged contribution to the Appellee's injuries and Inco's alleged attempt to prevent recovery by the Appellee.

Pursuant to West Virginia Code § 23–2A–1(c), Inco is entitled to subrogation of fifty percent of the amount received by the Appellee. We reverse the lower court's decision and remand for reinstatement of the subrogation lien.

Reversed and remanded.

7. While we recognize the distinction between the facts necessary to support a finding of negligence and those necessary to establish deliberate intent under West Virginia Code § 23–4–2(c), there was no attempt below to separate the issues of the deliberate intent claim and simple negligence, and the record is devoid of any establishment of negligence by Inco.

8. The Appellee's brief recognizes that the "subrogation statute is silent in determining whether the fund or self-insured employers are prevented from asserting subrogation where the employer caused or contributed to the employee's injuries" and suggests that we expand upon the Legislative language and judicially create "standards to address this situation." We decline to legislate from the bench, and we defer to the scheme devised by the Legislature. While the concept of judicial empiricism was addressed in 1921 by Dr. Roscoe Pound, Dean of the Harvard Law School in *The Spirit of the Common Law*, application of

such doctrine empowering courts to create law, is particularly imprudent in addressing issues to which the Legislature has already spoken. In exercising judicial restraint, courts have reasoned that it is not the proper function of the judicial branch to supply legislative omissions from a statute in an attempt to make it conform to some presumed intention of the Legislature not expressed in the statutory language. *Cemetery Board v. Telophase Society of America*, 87 Cal.App.3d 847, 858, 151 Cal.Rptr. 248 (Cal.App. 1978). "[J]udicial process is concerned with the interpretation and application of legislative intent, not with usurpation of the lawmaking function." *Rudley v. Tobias*, 84 Cal.App.2d 454, 458, 190 P.2d 984 (Cal.App.1948).

9. Inco had also discarded the fuses which were in issue prior to the initiation of the civil action. Thus, the Appellee was unable to have those available for testing to determine whether they had been manufactured improperly.