No. 15-0012 - *Old Republic Insurance Co. v. O'Neal et al.*

**FILED**

**June 10, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, concurring, in part, and dissenting in part:

I am in firm agreement with the majority's decision that the trial court erred in denying Old Republic Insurance Company's ("Old Republic") motion for relief under Rule 60(b) as the record in this case suggests that the trial court and plaintiffs' counsel took concerted efforts to prevent Old Republic from being a party to this action until after the issue of Old Republic's right to statutory subrogation was resolved in a manner favorable to plaintiffs' counsel.[1]  After correctly recognizing the "culpability" of both the circuit court and plaintiffs' counsel, the majority then proceeded to give Old Republic a Pyrrhic victory by affirming the trial court's erroneous decision on the issue of statutory subrogation. Accordingly, I concur in part, and dissent in part.

---

[1]The majority describes at length how plaintiffs' counsel wrongly styled a "proposed" order that was clearly prepared and filed as a final order; how the circuit court failed to give a courtesy call to Old Republic or to require the subject order to be re-styled as a final order before its filing; and how these actions combined to prevent Old Republic from having notice and a right to appeal the matters set forth in that order.  But the majority stops short of connecting the dots to paint the complete picture of the calculated efforts plaintiffs' counsel undertook in tandem with the circuit court to gain a ruling affecting Old Republic's right to statutory subrogation as part of the Court's ruling to admit Old Republic as a party to the case.  Rather than obtaining a procedural ruling limited to approving the filing of Old Republic's declaratory judgment claim, plaintiffs' counsel hurriedly and covertly obtained a ruling on the merits of the case that effectively blocked Old Republic from presenting its arguments to the court on the issue of statutory subrogation.  In burying these additional facts under the rug, the majority has implicitly condoned improper trial tactics and failed to voice its disapproval of what appears to be highly questionable and arguably unethical conduct on plaintiffs' counsel's part.

1

In addressing the issue of subrogation, the majority correctly recognized the trial court's fallacious reasoning that the provisions of West Virginia Code § 23-2A-1(b)(1) (2010) were not applicable based upon its determination that Speed Mining was a "de facto self insured employer under the statute."[2] After correctly dismantling that erroneous "self insured" characterization, the majority fell into the trap of misdirected arguments advanced by the plaintiffs. By adopting the plaintiffs' theory that the insurance deductible operated as a bar to Old Republic's statutory right of subrogation, the majority not only contravened clear and unambiguous legislative intent, but it failed to give effect to the insurance policy terms that expressly include the deductible within the insurer's rights of subrogation. Adding insult to injury, the majority approved the attempted and wholly improper "waiver" of Old Republic's rights of subrogation by Speed Mining.[3] Decidedly infirm, the majority's reasoning crumbles upon analysis.

Beginning with the language of the statute at the center of this dispute, the first analytical hole in the majority's reasoning appears with the recognition that the statutory right of subrogation is expressly linked to moneys paid out to an injured worker under the workers' compensation scheme. *See* W.Va. Code § 23-2A-1(d) (2010) (establishing

[2]The record makes clear that Speed Mining was a named insured on a workers' compensation policy issued by Old Republic.

[3]Rather than an outright waiver, the trial court found an implicit one based on Speed Mining's failure to "expressly preserve Speed Mining's right to be reimbursed for workers compensation benefits paid to Mr. O'Neal should he recover monies from third-parties."

mandatory statutory subrogation lien in favor of Insurance Commissioner, private carrier or self-insured employer "upon the moneys received" when injured worker, his or her dependents, or personal representative makes claim against third party). Noticeably absent from the statutory right, however, is any language that seeks to limit an insurer's subrogation lien by the amount of any policy deductible. The clear and only statutory trigger to entitlement to subrogation under West Virginia Code § 23-2A-1(d) is the injured worker's *receipt* of workers' compensation benefits.

Similarly glossed over by the majority in mistakenly viewing this matter under principles of common law subrogation is the fact that section 1(b)(1) frames the right of statutory subrogation based on "indemnity and medical benefits paid as of the date of the recovery." W.Va. Code § 23-2A-1(b)(1); *Reliance Ins. Co. v. Hibdon*, 333 S.W.3d 364, 374 (Tex. App. 2011) ("Statutory subrogation is governed by the terms of the statute under which it is claimed."). As in section 1(d), the key is the fact of payment but there is no restriction with regard to whether the insurer who issued the policy pursuant to which the injured worker is receiving workers' compensation benefits paid those benefits directly or indirectly in the event the moneys were subject to a deductible. The reason for this is obvious. "The purpose of subrogation is 'to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it.'" *Bush v. Richardson*, 199 W.Va. 374, 378, 484 S.E.2d 490, 494 (1997) (internal citation omitted). What the

3

Legislature has designed is a statutory mechanism to compel a third party who contributed to or caused a worker's injury to reimburse the insurance company or self-insured employer for the benefits this state requires the employer to remit to an injured worker.

Where the circuit court erred in its reasoning, and the majority in adopting that skewed reasoning, was to view the statutory right of subrogation as flowing from "a party's payment of benefits to the injured worker." By construing statutory subrogation in this fashion, the circuit court imposed a nonexistent qualification to the right of subrogation that the Legislature established *solely* in favor of an insurance company, or an employer in the instance of self-insurance. By engrafting an exception to the insurer's subrogation lien because the benefits paid fell within the insurance policy deductible, the circuit court impermissibly altered the statutory scheme. Previously, this Court was quick to recognize that the statutory nature of our workers' compensation system requires both deference and judicial restraint. *See Cart v. Gen. Electric* Co., 203 W.Va. 59, 506 S.E.2d 96 (1998). In refusing to limit a self-insured employer's right to statutory subrogation based on the employer's alleged commission of negligence, this Court expressly declined the plaintiff's invitation to "expand upon the Legislative language and judicially create 'standards to address this situation.'" *Id.* at 63 n.8, 506 S.E.2d at 100 n.8. Explaining our refusal "to legislate from the bench," we observed: "[I]t is not the proper function of the judicial branch to supply legislative omissions from a statute in an attempt to make it conform to

4

some presumed intention of the Legislature not expressed in statutory language." *Id.; accord Henry v. Benyo*, 203 W.Va. 172, 181, 506 S.E.2d 615, 624 (1998) ("As a Court charged with reviewing and interpreting the will of the Legislature, we are constrained to abide by its mandates and to refrain from creating 'judicial legislation.'"); *Nat'l Fruit Product Co. v B&O RR Co.,* 174 W.Va. 759, 765, 329 S.E.2d 125, 132 (1985) ("We have traditionally stated that our workers' compensation system is entirely a statutory creature and for this reason we feel that judicial intrusion into the statutory framework, particularly on so complex an issue [subrogation], is unwarranted.") (footnote omitted); *see generally* 2A Arthur Lawson, *The Law of Workmen's Compensation* § 74.31(b) (1996) (examining workers' compensation statutes and commenting that "[r]eimbursement of the compensation payor according to the terms of the statute is mandatory, and cannot be modified by courts").

That the circuit court erred in applying common law notions of subrogation is demonstrated by this Court's recognition in *Bush* that "the legislature expressly modified the usual, ordinary meaning of subrogation as it is used in that *Code* [W.Va. Code § 23-2A-1] section by making the made-whole rule inapplicable." Syl. Pt, 4, in part, 199 W.Va. at 375, 484 S.E.2d at 491. Further addressing the legislative eradication of the made-whole rule, we stated:

> While this result seems to be patently unfair and to contravene
> simple logic, this outcome is indeed the one prescribed by the
> Legislature. Though equity dictates an injured employee should
> be permitted to obtain recoveries from varying sources to be

5

> "made whole" after his/her work-related accident, the Legislature has determined the right of the Commissioner [now also private carrier or self-insured employer] to recover sums it has expended as workers' compensation to be greater.

*Benyo*, 203 W.Va. at 181, 506 S.E.2d at 624. With its decision to apply "the ordinary meaning of the term 'subrogation,' whereby a subrogee is entitled 'to collect that which he has advanced,'" the circuit court patently ignored the legislative decision to give the insurer or self-insured employer a subrogation lien dependent *solely* on the injured worker's receipt of benefits. Wise or not, that was the Legislature's decision as the language of West Virginia Code § 23-2A-1(b)(1) and 1(d) make clear.

Having demonstrated that both the circuit court and the majority evaded the unmistakably clear directive of the Legislature by extinguishing a subrogation lien based on an insurance deductible, that error is further magnified by examining the insurance contract. Under the governing policy, Old Republic expressly preserved unto itself the right "to recover all advances and payments, including those within the Deductible Amount(s) from anyone liable for the injury." To avoid having to deal with this fully enforceable provision, the majority turns to the language in the settlement agreement between Speed Mining and the third-party Baughan defendants whereby Speed Mining agreed not to pursue any further recovery relating to the incident. Because Speed Mining relinquished its "right" to seek reimbursement for any moneys expended in payment of the deductible amount of Mr. O'Neal's workers' compensation claim, the majority facilely concludes that Speed Mining

6

effectively waived any right–including that of Old Republic–to recover the workers'

compensation benefits paid out to Mr. O'Neal as of the time of the settlement. What the

majority overlooks is that Speed Mining had no statutory right of subrogation to waive. By

law, only Old Republic had the right to seek statutory subrogation. *See* W.Va. Code § 23-

2A-1(b)(1); *see also Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 532 (Tex. 2002)

(Hankinson, J., dissenting) (recognizing that employer "does not have any subrogation

interest under the express terms of the Labor Code"). Thus, to place any analytical credence

on the language of the settlement agreement, and to call it the "Achilles' heal of Old

Republic's argument" is woefully short-sighted. It is axiomatic that one party cannot give

up that which does not belong to him. Because the right of statutory subrogation did not

belong to Speed Mining, the settlement agreement, to which Old Republic was not a party,

cannot be relied upon as a basis to deny Old Republic a right to seek statutory subrogation.[4]

The language preserving Old Republic's right to recover all advancements and

payments, including the deductible, was clearly placed in the insurance contract to reinforce

its statutory right of subrogation. By including a subrogation lien for insurers or self-insured

employers, the Legislature sought to control losses and costs and to preclude a "double

---

[4]The majority set up its own house of cards in recognizing that, but for the insured's release of its right to reimbursement or its subrogation claim, the terms of the insurance contract typically control and could permit an insurer to enforce its subrogation lien, notwithstanding the existence of a deductible. *See Old Republic Ins. Co. v. O'Neal*, No. 15-0012, __ W.Va. __, __ n.29, __ S.E.2d __, __ n.29 (W.Va. June 10, 2016).

recovery" type situation, as a means of establishing a sustainable, workers' compensation system. *See* Robin Jean Davis & Louis J. Palmer, Jr., *Workers' Compensation Litigation in West Virginia: Assessing the Impact of the Rule of Liberality and the Need for Fiscal Reform*, 107 W.Va. L. Rev. 43, 78-79 (2004). In providing for that right of subrogation, the Legislature intentionally omitted any exception for amounts paid within the insurance policy deductible. The majority's decision to sanction a judicial alteration of the subrogation statute to impose such an exception was misguided. As this Court recognized in *Bush*, "the right to subrogation, . . . and what form it will take are matters properly left for the legislature to determine." 199 W.Va. at 376, 484 S.E.2d at 492. The form by which our Legislature set up the statutory right of subrogation, as we explained in *Bush*, was to limit the subrogation lien to the benefits paid as of the date of recovery and to further limit the recovery to fifty percent of the amount received from the third party. *See id.* Under our workers' compensation schema, there are no additional limits placed on a subrogation lien.

That our Legislature views the statutory right of subrogation as deserving of enforcement is clear. Included in the subrogation statute is a steep penalty for failing to protect the statutory right:

> If the injured worker obtains a recovery from a third party and the injured worker, personal representative or the injured worker's attorney fails to protect the statutory right of subrogation created herein, the injured worker, personal representative and the injured worker's attorney shall lose the right to retain attorney fees and costs out of the subrogation

8

amount. In addition, such failure creates a cause of action for the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, against the injured worker, personal representative and the injured worker's attorney for the amount of the full subrogation amount and the reasonable fees and costs associated with any such cause of action.

W.Va. Code § 23-2A-1(e). Given the tactics employed by plaintiffs' counsel to obtain the circuit court's ruling before Old Republic could even present its position,[5] this case smacks of subterfuge and suggests that the underlying objective was to obliterate Old Republic's statutorily-created right of subrogation. In affirming the circuit court's erroneous decision on the issue of statutory subrogation, the majority arguably aided what certainly looks like an end run around these penalty provisions.

Accordingly, I respectfully concur, in part, and dissent, in part.

---

[5]*See supra* note 1.