IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 19-0143
_____

FILED

**June 16, 2020**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

HARRY LEE SMITH, Jr.,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Mercer County
The Honorable William J. Sadler, Judge
No. 18-F-172

AFFIRMED IN PART AND VACATED IN PART

_____

Submitted: April 21, 2020
Filed: June 16, 2020

Derrick W. Lefler, Esq.
Princeton, West Virginia
Counsel for Petitioner

Patrick Morrissey, Esq.
Attorney General
Scott E. Johnson, Esq.
Gordon L. Mowen, II, Esq.
Assistant Attorneys General
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE ARMSTEAD and JUSTICE JENKINS concur in part and dissent in part and reserve their rights to file separate opinions.

**SYLLABUS BY THE COURT**

1.      '"Generally, the sufficiency of an indictment is reviewed *de novo.* An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations.' Syllabus Point 2, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996)."  Syllabus Point 2, *State v. Palmer*, 210 W. Va. 372, 557 S.E.2d 779 (2001).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."  Syllabus Point 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

WALKER, Justice:

A grand jury indicted Petitioner Harry L. Smith on two counts of kidnapping in violation of West Virginia Code § 61-2-14a(a)(2) (2017), among other crimes. Before trial, Petitioner moved to dismiss the kidnapping counts from the indictment, arguing that they did not include transportation as an element of the crime of kidnapping under § 61-2-14a(a)(2). The circuit court denied Petitioner's motion, the case proceeded to trial, and the jury convicted Petitioner on all counts. Petitioner now appeals the kidnapping convictions and renews his argument that the indictment omitted an essential element of the crime of kidnapping. We agree and vacate Petitioner's kidnapping convictions, while affirming his remaining convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, a Mercer County grand jury indicted Petitioner on two counts of kidnapping (Counts 1 and 2) in violation of West Virginia Code § 61-2-14a(a)(2), three counts of wanton endangerment (Counts 4–6) in violation of § 61-7-12 (2012), and one count of breaking and entering (Count 3) in violation of § 61-3-12 (2009). All charges stemmed from Petitioner's alleged actions at the home of his former girlfriend on December 4, 2017.[1]

---

[1] Petitioner allegedly broke into the home of his former girlfriend, A.R., armed with a gun. He then allegedly chased A.R.'s daughter, D.R.-1 from the house and into the yard as she ran to get help from the neighboring house where her father lived. It was alleged that Petitioner then reentered the home where he dragged A.R. by her arm and hair through the house, before forcing A.R. and her son, D.R.-2, out of the home toward the house next

1

Pertinent to Petitioner's appeal, the kidnapping counts of the indictment alleged as follows:

> THE GRAND JURY CHARGES, COUNT 1: that on or about the 4th day of December 2017, in the County of Mercer, State of West Virginia, [Petitioner] committed the offense of "Kidnapping" by unlawfully and feloniously holding [D.R.-2] at gun point against [his] will, with the intent to terrorize [him], against the peace and dignity of the State; and
>
> COUNT 2: the Grand Jury further charges, that on or about the 4th day of December, 2017, in the County of Mercer, State of West Virginia, [Petitioner] committed the offense of "Kidnapping" by unlawfully and feloniously holding A.R. at gun point against her will, with the intent to terrorize her, against the peace and dignity of the State . . . .

Petitioner moved to dismiss Counts 1 and 2 of the indictment in July 2018. He argued that those counts omitted an element of the offense of kidnapping under § 61-2-14a(a)(2).[2] Specifically, Petitioner asserted that they did not include

---

door. According to testimony offered at trial, Petitioner then held A.R. in front of him as a shield during negotiations with law enforcement. It was alleged that, ultimately, Petitioner relinquished his gun after officers agreed to let him speak with A.R. for a few minutes before arresting him. "Consistent with our practice in cases involving sensitive matters, we use the victim's initials." *State v. Edward Charles L.*, 183 W. Va. 641, 645, 398 S.E.2d 123, 127 (1990).

[2] The relevant part of that statute states:

> (a) Any person who unlawfully takes custody of, conceals, confines or restrains another person against his or her will by means of force, threat of force, duress, fraud, deceit, inveiglement, misrepresentation or enticement with the intent: . . . (2) To transport another person with the intent to inflict bodily injury or to terrorize the victim or another person . . . (3) . . . is guilty of a felony and upon conviction, shall be punished by confinement by the Division of Corrections for life, and

2

"transportation," which Petitioner characterized as the "defining element" of the crime of kidnapping. Petitioner concluded that because Counts 1 and 2 omitted the essential element of "transportation," they did not follow the language of § 61-2-14a(a)(2), so they suffered a material deficiency that the State could not cure by amending the indictment. The State responded that the word "or" in § 61-2-14a(a)(2) made that subsection "disjunctive" so that a person could violate § 61-2-14a(a)(2) in two ways. First, he could violate that statute by unlawfully taking custody, inter alia, of a person and then transporting that person with the intent to inflict bodily injury. Or, he could violate that statute by unlawfully taking custody, inter alia, of a person with the intent to terrorize that person or another. So, the State reasoned that, contrary to Petitioner's argument, Counts 1 and 2 of the indictment were sufficient in view of the statutory language.

The circuit court considered Petitioner's motion to dismiss during a pre-trial hearing on September 10, 2018. Dispensing with argument from the parties, the circuit court denied Petitioner's motion and explained that it had

> looked at [Petitioner's motion to dismiss] and reviewed the statute in question. The Court would begin its ruling by saying that this is a poorly written statute. I mean, it really is. However, you know, just a plain reading of the statute, in the Court's opinion, the terrorize portion under [(a)(2)] in the Court's opinion does not require to transport. I don't – I don't think the transport is required. I think if they wanted to require the transport, there's a better way they could have worded it. Like I said, I think the whole statute itself is poorly written. But the Court's plain reading of the statute specifically [a](2)],

---

notwithstanding the provisions of article twelve [§§ 62-12-1 et seq.], chapter sixty-two of this code, is not eligible for parole.

3

> if the kidnapping is done with the intent to terrorize a victim or another person, then the transportation is not required.[3]

The case proceeded to trial and the jury convicted Petitioner on all counts.[4] Petitioner moved for a new trial on November 2, 2018,[5] and renewed his argument that Counts 1 and 2 of the indictment omitted an essential element of the crime of kidnapping. By order entered January 24, 2019, the circuit court denied Petitioner's motion for a new trial, adjudged him guilty on all counts of the indictment, and sentenced him to not less than twenty years and not more than fifty years on Count 1, Kidnapping, and life without mercy on Count 2, Kidnapping, with those sentences to run consecutively; to concurrent five-year sentences for Counts 4, 5, and 6 (wanton endangerment); and to one to ten years for Count 3 (breaking and entering). The court ordered the sentences for Counts 3, 4, 5, and 6 to run concurrently, and those concurrent sentences to run consecutively to the sentences for Counts 1 and 2. Petitioner now appeals that part of the circuit court's order of January 24, 2019 pertaining to the convictions and sentences for Counts 1 and 2.

---

[3] The circuit court entered an order on September 18, 2018, memorializing its ruling denying Petitioner's motion to dismiss the kidnapping counts.

[4] With regard to the kidnapping charges, the circuit court instructed the jury that "kidnapping occurs when a person unlawfully takes custody of, conceals, confines, or restrains another person against his or her will, by means of force, threat of force or duress, with the intent to terrorize the victim."

[5] Petitioner filed a memorandum of law in support of that motion on January 4, 2019.

4

## II. STANDARD OF REVIEW

"'Generally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations.' Syllabus Point 2, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996)."[6] "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."[7] We turn to the parties' arguments.

## III. DISCUSSION

Petitioner's appeal poses the question of whether the circuit court correctly applied West Virginia Code § 61-2-14a(a)(2) when it found that the kidnapping counts of the indictment correctly stated the elements of that offense.[8] In pertinent part, § 61-2-14a(a) says:

---

[6] Syl. Pt. 2, *State v. Palmer*, 210 W. Va. 372, 557 S.E.2d 779 (2001).

[7] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

[8] Petitioner raises an additional seven assignments of error on appeal, certain of which are plainly related to the kidnapping charge and are therefore mooted by our resolution. The vacation of Petitioner's kidnapping convictions moots the substance of Petitioner's second, third, seventh, and eighth assignments of error. It also moots the substance of his fourth assignment of error ("The Trial Court Erred in Deying Appellant's Motion in Limine Regarding Evidence of the Post Event Impact of [D.R.-1]"). In his brief, Petitioner states that D.R.-1's challenged testimony was irrelevant to the charge of wanton endangerment (the only crime with which Petitioner was charged related to D.R.-1), but that it "materially affected the jury's consideration of mercy for [Petitioner] upon the kidnapping charges on which [Petitioner] was convicted." With Petitioner's kidnapping convictions vacated, any effect that D.R.-1's testimony may have had upon the jury's consideration of mercy is irrelevant, mooting this assignment of error.

(a) Any person who unlawfully takes custody of, conceals, confines or restrains another person against his or her will by means of force, threat of force, duress, fraud, deceit, inveiglement, misrepresentation or enticement with the intent:

(1) To hold another person for ransom, reward or concession;

(2) To transport another person with the intent to inflict bodily injury or to terrorize the victim or another person; or

---

Further, at oral argument, petitioner seemingly abandoned his request for a new trial on the wanton endangerment and breaking and entering charges, notwithstanding his appeal of certain evidentiary issues pertaining to those charges. Regardless of that apparent concession, we find no error and therefore affirm those convictions. In his fifth and sixth assignments of error, Petitioner contends that the circuit court violated West Virigina Rule of Evidence 404(b) and the procedure set forth in Syllabus Point 2 of *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994), when it permitted the State to introduce testimony regarding Petitioner's relationship with A.R. in the months preceding December 4, 2017. While Petitioner couches his argument in terms of Rule 404(b), we see no abuse of discretion in the circuit court's conclusion that the testimony was "res gestae," that is, intrinsic to the crimes charged in the indictment and so outside the restrictions imposed by Rule 404(b). *See State v. McKinley*, 234 W. Va. 143, 155, 764 S.E.2d 303, 315 (2014) ("Our cases have consistently held that evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b).") (internal quotation omitted). In the facts and circumstances of this case, testimony regarding Petitioner and A.R.'s relationship in the few months preceding December 2017 placed Petitioner's alleged crimes in the context of the couple's stormy relationship and Petitioner's similarly difficult relationship with A.R.'s children. *See id*. at 156, 764 S.E.2d at 316 (finding that evidence of two domestic violence incidents that occurred one and two months before victim's death was intrinsic evidence "necessary to place Ms. Patton's death in context with her relationship with Mr. McKinley, and to complete the story of the violence Mr. McKinley inflicted on her"). Therefore, Rule 404(b) would not apply to the disputed testimony and Petitioner is not entitled to relief on this assignment of error.

Morever, even if the circuit court had abused its discretion in admitting the disputed testimony, we would find that error to be harmless. Removing the testimony regarding Petitioner's volatile relationship with A.R. (i.e., the car chases, the alleged acts of vandalism, and the threatening phone call) from the case, we find that the State still presented more than sufficient evidence to permit the jury to convict Petitioner on the three charges of wanton endangerment and one charge of breaking and entering and that the disputed testimony had no prejudicial effect upon the jury.

6

(3) To use another person as a shield or hostage, is guilty of a felony and, upon conviction, shall be punished by confinement by the Division of Corrections for life, and, notwithstanding the provisions of article twelve, chapter sixty-two of this code, is not eligible for parole.

Petitioner argues that the circuit court misapplied that statute because the kidnapping charges in the indictment—that Petitioner "committed the offense of 'Kidnapping' by unlawfully and feloniously holding [others] at gun point against [their wills], with the intent to terrorize [them]"—omitted an essential element of the crime of kidnapping: transportation. Petitioner argues that if this Court accepts the circuit court and State's application of the statute, we will enable the transformation of lesser crimes, including wanton endangerment with a firearm,[9] into kidnapping.[10] According to Petitioner, the plain and unambiguous language of § 61-2-14a(a)(2) shows that the Legislature did not intend that outcome. Petitioner observes that the Legislature created three subsections within § 61-2-14a(a). Subsections (a)(1) and (a)(3) describe one form of kidnapping, he states. Had the Legislature "intended there to be two separate types of kidnapping described in [(a)(2)], one with transportation as an element and one without,"

---

[9] The crime of wanton endangerment involving a firearm carries a maximum term of incarceration of up to five years. W. Va. Code § 61-7-12 (1994) ("Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than $250 nor more than $2,500, or both.").

[10] The crime of kidnapping, § 61-2-14a, carries up to a life sentence. W. Va. Code § 61-2-14a(a)(3).

7

Petitioner reasons, then it would "have separated them into two separate subsections as [it] had done with the other various ways the offense could be committed, as in subsections (a)(1) and (a)(3)." In sum, Petitioner's theory is § 61-2-14a(a)(2) describes only one kidnapping offense—not two as the circuit court and State conclude—and that Counts 1 and 2 omitted an essential element of that single offense: transportation.

The State responds that had the Legislature intended § 61-2-14a(a)(2) to describe only one kidnapping offense, rather than two, it would not have used the infinitive "to terrorize." According to the State, the presence of the second infinitive verb in (a)(2) sets it apart from (a)(1) and (a)(3), which both include only one infinitive verb ("To hold" and "To use," respectively) and create only one form of kidnapping, each. Because the Legislature used two infinitive verbs in (a)(2) ("to inflict" and "to terrorize"), the State contends that the Legislature clearly intended that (a)(2) describe two kidnapping crimes. The State also argues that the disjunctive "or" ("to inflict bodily injury *or* to terrorize . . . .") further demonstrates the Legislature's intent for (a)(2) to create two kidnapping crimes. Finally, the State argues that Petitioner's take on § 61-2-14a(a)(2) makes the "to" preceding "terrorize" superfluous and so violates the rule that all words in a statute must mean something.[11]

---

[11] *See* Syl. Pt. 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999) ("A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute.").

"The primary object in construing a statute is to ascertain and give effect to the intent of the legislature."[12] "Plain statutory language does not need to be construed. In other words, '[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.'"[13] "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."[14]

We recently determined in *State v. Woodrum* that an earlier, and nearly identical, version of § 61-2-14a(a)(2) is plain and unambiguous, meaning that a reader does not have resort to the rules of interpretation to ascertain the Legislature's intent for that statute.[15] We see no reason why that determination does not also apply to the more recent version of § 61-2-14a(a)(2) at issue in this case.[16] Because § 61-2-14a(a)(2) is plain and

---

[12] Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975).

[13] Syl. Pt. 2, *Tribeca Lending Corp. v. McCormick*, 231 W. Va. 455, 460, 745 S.E.2d 493, 498 (2013)) (quoting Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)). For example, the Court may not resort to consideration of statutes relating to the same subject matter to ascertain the intent of the Legislature if the plain language of the statute under review already makes that intent clear. *See State v. Epperly*, 135 W. Va. 877, 881, 65 S.E.2d 488, 491 (1951) ("Statutes relating to the same subject matter may not be resorted to in order to determine the intent of the legislature in enacting a statute if the statute is clear and unambiguous.") (internal quotation omitted).

[14] Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

[15] No. 18-1043 (W. Va. May 29, 2020) (hereinafter *Woodrum*).

[16] Before 2017, subsection (a) stated simply: "Any person who unlawfully restrains another person with the intent: . . . ." The parties do not argue that the 2017 amendment to § 61-2-14a(a) affects the application of the statute to Petitioner's case.

unambiguous, we apply it to Counts 1 and 2 of the indictment to determine whether they include the essential elements of the kidnapping offense described in that subsection. As in *Woodrum*, the plain language of the statute leaves us no choice but to find that they do not.

Petitioner and the State make arguments that are nearly identical to those offered by the parties in *Woodrum*. And, we resolve those arguments as we did in in that very recent case. First, we agree with Petitioner that the parallel language in § 61-2-14a(a)(1), (2), and (3) is meaningful. As we explained in *Woodrum*, the Legislature used parallel language in those subsections,

> which, of course, calls for a parallel construction. Subsections (a)(1) ("To hold . . .") and (a)(3) ("To use . . .") create one form of kidnapping, each. The Legislature drafted (a)(2) similarly, beginning that subsection with "To transport . . . ." That parallel language communicates the Legislature's intent clearly: subsections (a)(1), (2), and (3) are to be read similarly. Indisputably, subsections (a)(1) and (a)(3) describe a single form of the offense of kidnapping. Logically, then, subsection (a)(2) does as well.[17]

There is no analysis in the State's brief that leads us to a different conclusion. So, the Legislature's choice to employ parallel construction in (a)(1), (2), (3) demonstrates its intention that § 61-2-14a(a)(2) create a single kidnapping offense.

The State's remaining arguments find no traction, just as the identical arguments found none in *Woodrum*. The State contends that "or" between "to inflict bodily

---

[17] *Woodrum* at 11–12 (internal quotations and notes omitted).

injury" and "to terrorize the victim or another person" creates two, distinct kidnapping offenses in § 61-2-14a(a)(2). We disagree. Generally, "or" is disjunctive,[18] but in the context of § 61-2-14a(a)(2), the word signals a choice between two intents: the intent to inflict bodily harm and the intent to terrorize the victim or another. Again, as we explained in *Woodrum*, "or" in § 61-2-14a(a)(2)

> connects two adjectival, infinitive phrases: "to inflict bodily injury" and "to terrorize the victim or another person . . . ." Those are adjectives that must describe a noun. In § 61-2-14a(a)(2), that noun is "the intent" immediately preceding the two, alternative adjectives ("to inflict" and "to terrorize"). So, in subsection (a)(2), "or" does not signify two, alternative crimes, as the State and circuit court conclude. It signifies that one may commit the single offense of kidnapping found in § 61-2-14a(a)(2) by acting with one of two alternative—but coequal—intents: "**the intent** [noun] *to inflict bodily injury* [adjective describing immediately preceding noun] or *to terrorize the victim or another person* [adjective describing immediately preceding noun]."[19]

As in *Woodrum*, we find in this case that "to inflict bodily injury" and "to terrorize the victim or another person" are coequal, alternative intents necessary to commit the single kidnapping offense described in West Virginia Code § 61-2-14a(a)(2). Counts 1 and 2 of Petitioner's indictment essentially "splice[] that subsection into two, separate

---

[18] *See Albrecht v. State*, 173 W. Va. 268, 271, 314 S.E.2d 859, 862 (1984) ("We have traditionally held that where the disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects.").

[19] *Woodrum* at 13 (emphasis in original) (internal notes omitted). For the same reason, we reject the State's argument that Petitioner's view of the of the statute renders the "to" preceding "terrorize" superfluous.

kidnapping crimes,"[20] which is an error that resulted in the omission of an essential element of the crime of kidnapping, § 61-2-14a(a)(2), from those counts of the indictment. That omission renders those counts of the indictment insufficient under Article III, § 14 of the West Virginia Constitution[21] and West Virginia Rule of Criminal Procedure 7(c)(1).[22]

"[T]he right of the Legislature to create and define crimes and to regulate their prosecution is extremely broad[.]"[23] The Legislature exercised that right when it essentially rewrote § 61-2-14a in 2012[24] to modernize what was an outdated and unwieldy

---

[20] *Id*. at 15.

[21] W. Va. Const. art. III, § 14 ("In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witnesses against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor")

[22] W. Va. R. Civ. P. 7(c)(1) ("The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.").

[23] Syl. Pt. 4, in part, *State ex rel. Cogar v. Kidd*, 160 W. Va. 371, 234 S.E.2d 899 (1977).

[24] *Compare* W. Va. Code § 61-2-14a(a) (1999) ("(a) Any person who, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this state or within this state, or otherwise kidnap any other person, or hold hostage any other person for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself, herself or others from bodily harm or of evading capture or arrest after he or she or they have committed a crime shall be guilty of a felony and, upon conviction, shall be punished by confinement by the division of corrections for life, and, notwithstanding the provisions of article twelve, chapter sixty-two of this code, shall not be eligible for parole . . . .") *with* § 61-2-14a (2012) ("(a) Any person who unlawfully restrains another person with the intent: (1) To hold another person for ransom, reward, or concession; (2) To transport another person with the intent to inflict

12

bodily injury or to terrorize the victim or another person; or (3) To use another person as a shield or hostage, shall be guilty of a felony and, upon conviction, shall be punished by confinement by the division of corrections for life, and, notwithstanding the provisions of article twelve, chapter sixty-two of this code, shall not be eligible for parole.").

We note that the current version § 61-2-14a includes a phrase similar to one found in Section 212.1, Kidnapping, of the Model Penal Code: "to inflict bodily injury on or to terrorize the victim or another." However, the differences between Model Penal Code Section 212.1, Kidnapping, and § 61-2-14a surpass any similarities. Section 212.1 of the Model Penal Code says, in pertinent part:

> A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:
>
> (a) to hold for ransom or reward, or as a shield or hostage; or
>
> (b) to facilitate commission of any felony or flight thereafter; or
>
> (c) to inflict bodily injury on or to terrorize the victim or another; or
>
> (d) to interfere with the performance of any governmental or political function.

Even if we needed to divine the Legislature's intent behind § 61-2-14a(a)(2)—and we do not because the language of § 61-2-14a(a)(2) is plain and unambiguous—we would not look to § 212.1 of the Model Penal Code for help. When it amended § 61-2-14a in 2012, the Legislature obviously knew of § 212.1 of the Model Penal Code because it borrowed portions of a phrase from the model statute. But, the Legislature chose not to adopt the remainder of § 212.1 or to conform amended § 61-2-14a to the model code, otherwise. "Legislation that is different from that common in other states, but on the same subject [e.g., the Model Penal Code], typically manifests a legislative purpose to accomplish legal results different from those in other states." 2B N. SINGER & S. SINGER, SUTHERLAND STATUTES & STATUTORY CONSTRUCTION § 51:6 (7th ed. 2007). The fact that the current § 61-2-14a is substantially different from § 212.1 of the Model Penal Code

13

general kidnapping statute.[25]  Those amendments created the current version of § 61-2-14a—the statute that we must apply in this case and that we must presume says what Legislature meant it to say.[26]  Perhaps this Court could have upheld Petitioner's kidnapping convictions and sentences under the old general kidnapping statute, as we did in similar in factual circumstances in *State v. Lewis*.[27]  But, in its current form, § 61-2-14a(a)(2) does not define kidnapping as charged in Counts 1 and 2 of the indictment against Petitioner.  Instead, it criminalizes the unlawful restraint of another by force with

manifests the Legislature's intent that § 61-2-14a should accomplish a different legal result from that accomplished by the model statute.

Finally, one author observed in 2009 that "[a] majority of states derive at least one of their kidnapping statutes from the Model Penal Code section 212.1," Kidnapping. Melanie A. Prince, *Two Crimes for the Price of One: The Problem with Kidnapping Statutes in Tennessee and Beyond*, 76 TENN. L. REV. 789, 806 (2009).  Of course, West Virginia did not modernize its kidnapping statute until three years after that statement was published, so it cannot stand for the proposition that West Virginia's current kidnapping statute is also derived from the Model Penal Code.

[25] *See* Syl. Pt. 2, in part, *State v. Miller*, 175 W. Va. 616, 336 S.E.2d 910 (1985) ("In interpreting and applying a generally worded kidnapping statute, such as W.Va.Code, 61–2–14a, in a situation where another offense was committed, some reasonable limitations on the broad scope of kidnapping must be developed.").

[26] *Martin v. Randolph Co. Bd. of Educ.,* 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995).

[27] 238 W. Va. 627, 638, 797 S.E.2d 604, 615 (2017) (holding that under pre-amendment version of § 61-2-14a, evidence was sufficient to affirm defendant's kidnapping conviction and sentence where he detained his former wife in her apartment against her will, stabbed her, and then denied her medical treatment).  *See also State v. Davis*, No. 11-1775, 2013 WL 1501435, at *3 (W. Va. Apr. 12, 2013) (holding that under the pre-amendment version of § 61-2-14a, evidence was sufficient to affirm defendant's kidnapping conviction where he attacked victim in her home and then detained her by force).

14

the intent to transport another person with the intent to inflict bodily injury or to terrorize the victim or another person.  That is the crime defined by the Legislature in § 61-2-14a(a)(2) and that is the statute by which we must judge Counts 1 and 2 of the indictment in this case.

"'This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation.'"[28]  This precept of judicial restraint has obligated us to make some tough decisions in criminal cases.  For example, in *State v. Dubuque*, the defendant was convicted of five separate violations of the recently-amended West Virginia Code § 61-8C-3 (2014) stemming from his possession of material visually depicting a minor engaged in sexually explicit conduct.  Those five convictions resulted in five, separate sentences that imposed a total period of incarceration of twenty-five to seventy-five years.[29]

On appeal, a unanimous Court found that the plain language of amended § 61-8C-3 demanded the "aggregation of the images and videos possessed by a person in

---

[28] Syl. Pt. 3, in part, *State v. Dubuque*, 239 W. Va. 660, 805 S.E.2d 421 (2017) (quoting Syllabus Point 2, *Huffman v. Goals Coal Co.*, 223 W.Va. 724, 679 S.E.2d 323 (2009)).  *See also State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 145, 107 S.E.2d 353, 358 (1959) ("It is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten, or given a construction of which its words are not susceptible, or which is repugnant to its terms which may not be disregarded.").

[29] *Dubuque*, 239 W. Va. at 662–64, 805 S.E.2d at 422–45.

15

order to determine the proper punishment[.]"[30] Applying that statutory language, we had to conclude that the circuit court erred when it sentenced the defendant for "multiple violations of [the statute] based on his possession of five individual VHS tapes," when, under "the [statute's] plain language . . ., [the defendant's] possession of five VHS tapes subject[ed] him to one violation of W.Va. Code § 61-8C-3(d)."[31] Application of the plain and unambiguous language of that statute dictated reversal of the sentencing order and remand for further proceedings. The plain language of the statute barred any other outcome. Similarly, the plain language of § 61-2-14a(a)(2) mandates the disposition in this case: reversal of Petitioner's kidnapping convictions and sentences.

We feel deeply for the victims in this case. We know that the events of December 7, 2014 will leave lasting scars. Our heartfelt sympathy for them, however, does not relieve us of "'the task of interpreting the Constitution and the laws of this State as they exist.'"[32] "Although a court might profoundly disagree with a particular statute or may even prefer another outcome, the judiciary is prohibited from substituting its judgment for that of the legislative branch, an action tantamount to improperly assuming the role of

---

[30] *Id*. at 666, 805 S.E.2d at 427.

[31] *Id*. at 669, 805 S.E.2d at 430.

[32] *W. Va. Bd. of Educ. v. Bd. of Educ. of the Cty. of Nicholas*, 239 W. Va. 705, 721, 806 S.E.2d 136, 152 (2017) (quoting *Meadows on Behalf of Prof'l Emps. of W. Va. Educ. Ass'n v. Hey*, 184 W.Va. 75, 77, 399 S.E.2d 657, 659 (1990)).

16

legislators."[33] We must not violate that prohibition in order to reach a particular result in a particular case.

In *Dubuque*, we invited the Legislature "to provide explicit direction defining the precise unit of prosecution in W.Va. Code § 61-8C-3 and . . . if it deem[ed] proper, permit separate violations of the statute based on each individual media storage device."[34] We invite the Legislature to consider whether West Virginia Code § 61-2-14a(a)(2) says what the Legislature would have it say, and if it does not, to amend it. Until the Legislature does that, we must continue to apply the statute's plain language, rather than "attempt to make it conform to some presumed intention of the Legislature not expressed in the statutory language."[35]

## IV. CONCLUSION

For the reasons stated above, we affirm the circuit court's order of January 24, 2019 as to Petitioner's convictions and sentences on Counts 3, 4, 5, and 6 of the indictment. We vacate that part of the circuit court's January 24, 2019 order as to Petitioner's convictions and sentences on Counts 1 (Kidnapping) and 2 (Kidnapping).

Affirmed, in part, Vacated, in part.

---

[33] *State ex rel. Biafore v. Tomblin*, 236 W. Va. 528, 537, 782 S.E.2d 223, 232 (2016).

[34] *Dubuque*, 239 W. Va. at 668, 805 S.E.2d at 429. The Legislature has yet to do so.

[35] *Cart v. Gen. Elec. Co.*, 203 W. Va. 59, 63 n.8, 506 S.E.2d 96, 100 n.8 (1998).